## SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY *v.* WAGNER.

### ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 311.   Submitted April 14, 1916.—Decided June 5, 1916.

Where the highest court of the State refuses to review the judgment of the intermediate appellate court of the State, it is to the latter court that the writ of error runs from this court.

Omission to plead or prove that plaintiff's injury occurred in interstate commerce not having been made the basis of any assignment of error, *held,* in this case, in view of the state of the record, not to be a ground for reversal.

Amendment to the Safety Appliance Act of March 2, 1903 enlarged the scope of the act so as to embrace all vehicles used on any railway that is a highway of interstate commerce whether employed at the time or not in interstate commerce.

The Safety Appliance Act requires locomotives to be equipped with automatic couplers and its protection extends to employees when coupling, as well as uncoupling, cars. *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1.

*Quære,* whether the failure of a coupler to work at any time does not sustain a charge that the Safety Appliance Act has been violated. See *Chicago & Rock Island Ry.* v. *Brown,* 229 U. S. 317.

The Employers' Liability Act and the Safety Appliance Act are *in pari materia*, and where the former refers to any defect or insufficiency, due to the employer's negligence, in its cars, engines, appliances, etc., it is clearly the legislative intent to treat a violation of the Safety Appliance Act as negligence—negligence *per se*.

Even if the injury of an employee, suing under the Employers' Liability Act, resulted from his improper management of a defective appliance covered by the Safety Appliance Act, such misconduct would only amount to contributory negligence which is, by express terms of the Liability Act, excluded from consideration in such a case.

166 S. W. Rep. 24, affirmed.

THE facts, which involve the validity of a judgment for damages for personal injuries in an action under the Employers' Liability Act, are stated in the opinion.

*Mr. R. J. Boyle, Mr. A. B. Storey, Mr. Samuel Herrick* and *Mr. Rufus S. Day* for the plaintiff in error.

*Mr. Perry J. Lewis, Mr. H. C. Carter* and *Mr. John Sehorn* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The judgment that is brought under review by this writ of error is the outcome of an action begun in the District Court of Bexar County, Texas, by defendant in error against plaintiff in error, resulting in a judgment in his favor. This was affirmed by the Court of Civil Appeals, a rehearing was denied (166 S. W. Rep. 24, 28), and our writ of error is directed to that court because the Supreme Court of Texas refused to review the judgment.

We shall describe the parties according to their attitude in the trial court. Plaintiff's petition alleged that on October 18, 1911, he was employed as a brakeman by defendant, a common carrier by railroad engaged in both interstate and intrastate commerce; that defendant had in use in both kinds of commerce a certain engine and a

certain car, and it became plaintiff's duty to couple them together; that the couplers would not couple automatically by impact, as required by law, "and for the purpose of making said coupling it became necessary for the plaintiff to stand upon the footboard of said engine, between said engine and car, and to shove the knuckle of the coupler on said engine so as to bring it into proper position to make the coupling as aforesaid;" that plaintiff placed his left foot against the knuckle of the coupler of the engine for the purpose of pushing it into position, when he lost his balance, slipped and fell, and his left foot was caught between the couplers and crushed. Defendant interposed a general denial and certain special defenses, which latter were struck out on demurrer. They set up that defendant was a common carrier engaged in interstate commerce, and invoked the provisions of the Federal Safety Appliance Act of March 2, 1893 (c. 196, 27 Stat. 531), and the amendment of March 2, 1903 (c. 976, 32 Stat. 943), averring that all couplers attached to railroad engines, tenders, or cars must have sufficient lateral motion to permit trains to round the curves, and must be provided with adjustable knuckles which can be opened and closed, and such couplers must be adjusted at times in order that they may couple automatically by impact, and that there is no kind of automatic coupler constructed or that can be constructed which will couple automatically at all times without previous adjustment, because of the lateral play necessary to enable coupled cars to round curves; that the engine and car upon which plaintiff was employed at the time of his injury were engaged in interstate commerce, and were equipped with automatic couplers which would couple automatically by impact as required by the acts of Congress, but an adjustment was necessary for this purpose, and could have been made by the plaintiff going between the cars while they were standing but without going between the ends of the cars while in motion or

between a moving engine and cars, and without kicking the coupling or in any manner endangering his own personal safety; with more to the same effect.

At the trial the evidence tended to show that plaintiff was engaged in switching at one of defendant's yards and was riding upon the footboard at the rear of the engine in order to make a coupling between it and a box car; that at the first impact—to use plaintiff's words—"the coupling wouldn't make; I coupled up against them but it wouldn't make." He then signaled the engineer to draw ahead, and this having been done, he adjusted the knuckle and pin upon the box car, and "I gave the engineer a back-up signal to couple in again, and I got back on the footboard of the engine; when I got on the footboard I looked down and I seen the drawhead on the engine was shifted way over to my side, and I reached up with my left foot to shift the drawhead over so it would couple, and my right foot slipped on the wet footboard;" as a result of which his left foot was caught between the drawheads and crushed. He testified that at the first impact the drawhead on the engine was in line with that on the box car, and that the only thing that prevented the coupling at this time was the failure of the pin on the box car to drop. And further: "When the coupling apparatus of these automatic couplers are in proper condition and they are properly connected, they couple by impact automatically; . . . when the brakeman couples a car he pulls a lever on the outside of the car, that opens the knuckle—that raises the pin and opens the coupler up, then all he has to do is to give a signal and they back right up. He has nothing to do with reference to fixing the knuckle or anything of that sort." He testified in effect that the coupler was out of order. The Court of Civil Appeals held that so far as this was opinion evidence it was admissible as the opinion of a qualified expert, plaintiff having been employed by defendant as a brakeman for eight years, and being acquainted with the

operation of couplers. A witness called by defendant testified: "These couplers are made to couple automatically by impact—they are supposed to be in such condition as that, so when they come together they will couple without the necessity of men going in between the cars to couple or uncouple, and should be in that condition. If they do not couple with the automatic impact, they are not in proper condition."

The trial court instructed the jury that if the locomotive and car in question were not equipped with couplers coupling automatically by impact without the necessity of plaintiff going between the ends of the cars, and by reason of this and as a proximate result of it plaintiff received his injuries, the verdict should be in his favor, otherwise in favor of defendant, and that the burden of proof was upon plaintiff to establish his case by a preponderance of the evidence.

The Court of Civil Appeals treated the case as coming within the Federal Employers' Liability Act of April 22, 1908 (c. 149, 35 Stat. 65), and the assignments of error in this court and the argument thereon proceed upon that basis. We shall decide the case upon that assumption, although we find nothing in the record to show that, in fact, plaintiff was employed in interstate commerce at the time he was injured. We are asked to take notice of the omission of pleading and proof of the fact as a "plain error" and deal with it, although not assigned, under paragraph 4 of our Rule 21. We must decline to do this, principally for two reasons: (a) The omission may have been due to an oversight that would have been corrected if the point had been properly raised by the present plaintiff in error in the state courts. (b) Since the Safety Appliance Acts are in any event applicable— defendant's railroad being admittedly a highway of interstate commerce—whether plaintiff was employed in such commerce or not (*Tex. & Pac. Ry.* v. *Rigsby, ante,* pp. 33,

42), the only materiality of the question whether the Employers' Liability Act also applies is in its bearing upon the defense of contributory negligence; the former act leaving that defense untouched (*Schlemmer* v. *Buffalo &c. Ry.*, 220 U. S. 590, 596), while the latter (§ 3; 35 Stat. 66) abolishes it in any case where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee, and in other cases limits its effect to the diminution of the damages. Now, an examination of the record discloses that defendant at the trial raised no question of contributory negligence. Such negligence was averred in the special defenses that were struck out, but not as constituting a defense against a violation of the Safety Appliance Acts; and the special defenses contained an allegation to the effect that at the time of his injury plaintiff was engaged in interstate commerce. In this state of the record, we do not deem it proper to consider the omission to plead or prove that plaintiff's injury occurred in interstate commerce, as a ground for reversing the judgment, it not having been made the basis of any assignment of error.

In the Court of Civil Appeals, as in this court, error was assigned upon the action of the trial court in striking out the special defenses. The appellate court held, however, that under the general denial defendant was at liberty to show all that had been averred in the special defenses respecting the couplers, and that it was permitted to prove all that it offered upon that subject. It is insisted here, and the insistence is many times repeated, that the trial court refused to admit in evidence testimony offered to show that all automatic couplers necessarily require adjustment at times in order that they may operate automatically upon impact, and that the adjustment is accomplished by means of hand levers fitted to the cars and operated by the trainmen without going between the cars; the object being to show that the engine and car

were equipped as required by law, and that the draw-bar
on the engine was thrown out of line by reason of plaintiff's
failure to use the hand lever on the box car in prepara-
tion for the first impact. It is insisted, also, that certain
testimony with reference to adjusting couplers on engines
and cars, made necessary by lateral play, in order that
they might couple automatically by impact, having been
admitted, was afterwards excluded as inadmissible. There
is nothing in the certified transcript to sustain either of
these contentions. There is an assertion to the same
effect in the motion for rehearing filed in the Court of
Civil Appeals, where it was stated that the exclusion of
the testimony would be made to appear by reference to
the stenographer's official report of the trial. The Court
of Civil Appeals declared, however, that no such document
had been filed or would be filed in that court; proceeding
thus: "This cause has been considered on the agreed
statement of facts, approved by the trial judge, and the
effect of such statement of facts cannot be impaired or
destroyed by a document not filed among the papers,
and which has no place among the papers. The state-
ment of facts bears out the statement of this court that
appellant was permitted to introduce all the testimony
it desired on the subject of the coupler on the engine.
The record fails to show that any testimony offered by
appellant was withdrawn by the court from the jury."

Eliminating, therefore, because unsupported by any-
thing in the record, the insistence that appellant was
deprived of the opportunity of presenting at the trial
the matters that had been set up in the special defenses,
the remaining questions are few and easily disposed of.

There was sufficient evidence to warrant the jury in
finding that the coupler upon the box car or that upon
the engine, or both, were in bad repair, and that for this
reason they did not measure up to the standard pre-
scribed by the act of March 2, 1893, for such equipment,

viz.: "Couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." This standard was by the first section of the 1903 amendment made to apply "in all cases, whether or not the couplers brought together are of the same kind, make, or type;" and was extended to "all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, . . . and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith," subject to an exception not now material. As has been held repeatedly, this amendment enlarged the scope of the original Act so as to embrace all locomotives, cars, and similar vehicles used on any railway that is a highway of interstate commerce, whether the particular vehicles are at the time employed in interstate commerce or not. *Southern Railway* v. *United States*, 222 U. S. 20, 26; *Tex. & Pac. Ry.* v. *Rigsby, ante,* pp. 33, 37.

That the act requires locomotives to be equipped with automatic couplers, and that its protection extends to men when coupling as well as when uncoupling cars, are points set at rest by *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 15, 18.

It is insisted that neither the original Act nor the amendment precludes adjustment of the coupler prior to or at the time of impact, or treats a drawbar out of alignment as a defect in the automatic coupler, or as evidence that the cars are not equipped with couplers measuring up to the statutory standard. The evidence of bad repair in the automatic equipment was not confined to the fact that the drawbar on the engine was out of line; the fact that the coupling-pin on the box car failed to drop as it should have done at the first impact, and required manipulation in preparation for the second impact, together with the fact that the draw-bar on the engine was so far out of line as to require adjustment in preparation for the second

impact, and the opinion evidence, being sufficient to sustain a finding that the equipment was defective. The jury could reasonably find that the misalignment of the draw-bar was greater than required to permit the rounding of curves, or, if not, that an adjusting lever should have been provided upon the engine as upon the car, and that there was none upon the engine. We need not in this case determine, what was conceded in *Chicago, R. I. & Pac. Ry.* v. *Brown*, 229 U. S. 317, 320, that the failure of a coupler to work at any time sustains a charge that the Act has been violated.

It is argued that in actions based upon the Employers' Liability Act the defendant can not be held liable without evidence of negligence, *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501, being cited. But in that case, as the opinion shows (p. 507), there was no question of a violation of any provision of the Safety Appliance Act; and in what was said (p. 501) respecting the necessity of showing negligence, reference was had to causes of action independent of that Act. The Employers' Liability Act, as its § 4 very clearly shows, recognizes that rights of action may arise out of the violation of the Safety Appliance Act. As was stated in *Tex. & Pac. Ry.* v. *Rigsby*, *ante*, pp. 33, 39,—"A disregard of the command of the statute [Safety Appliance Act] is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied." If this Act is violated, the question of negligence in the general sense of want of care is immaterial. 241 U. S. 43, and cases there cited. But the two statutes are *in pari materia*, and where the Employers' Liability Act refers to "any defect or insufficiency, *due to its negligence*, in its cars, engines, appliances," etc., it clearly is the legislative intent to treat a violation of the Safety Appliance Act as "negligence"—what is sometimes called negligence *per se.*

In various forms plaintiff in error raises the contention that it was plaintiff's improper management of the coupling operation that was the proximate cause of his injury. But any misconduct on his part was no more than contributory negligence, which as already shown, is by the Employers' Liability Act excluded from consideration in a case such as this.

*Judgment affirmed.*