(No. 2316. Sept. 12, 1919.)
## THAYER v. DENVER & R. G. R. CO.

Rehearing Denied Nov. 29,1919.

### SYLLABUS BY THE COURT

1. Special findings of a jury will not justify the setting aside of a general verdict unless such findings are in irreconcilable conflict with the general verdict.          P. 564

2. The special interrogatory submitted should call for findings upon the material issues raised by the pleadings, and before such findings will overthrow the general verdict, they must be antagonistic thereto upon the ultimate issue or issues necessarily determined by the general verdict.          P. 564

3. The answer by the jury to an interrogatory, "We don't know," is equivalent to a finding against the party holding the affirmative upon such fact.          P. 564

4. In an action against a railroad company for injuries alleged to have been incurred by reason of a violation of the federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.) by the railroad company, the defense of assumption of risk and contributory negligence are eliminated by the federal Employers' Liability Act (sections 8657—8665).          P. 565

5.   Under the federal Safety Appliance Act, an absolute and unqualified duty is imposed upon the carrier to see that its cars are equipped with efficient hand brakes.          P. 565

6.   The words "efficient," "inefficient," and "defective" defined.   **Held,** that the word "defective" is not the antonym of "efficient," and, where the federal Safety Appliance Act requires all cars to be equipped with efficient hand brakes, a finding by the jury, in answer to a special interrogatory, that the hand brake rigging on the car in question was not in any manner defective, is not equivalent to a finding that the car was equipped with an efficient hand brake.          P. 566

7.   A finding that a hand brake upon a railroad car was not defective did not override a general verdict which was necessarily based upon a finding that the hand brake was inefficient.          P. 566

Appeal from District Court, Santa Fe County; Leaky, Judge.

Action by Fred W. Thayer against the Denver & Rio Grande Railroad Company. General verdict for plaintiff, defendant's motion for judgment on the special interrogatories and answers thereto sustained, and judgment entered for defendant, and plaintiff appeals. Reversed and remanded, with instructions to set aside the judgment for defendant and to overrule the motion etc.

CATRON & CATRON, and E. P. DAVIES, all of Santa Fe, for appellant.

E. R. WRIGHT and A. B. RENEHAN, both of Santa Fe, for appellee.

### OPINION OF THE COURT

ROBERTS, J.   This is the second appeal in this case, the former opinion being reported in 21 N. M. 330, 154 Pac. 691.   There a judgment in favor of the appellant in this case was reversed and the case remanded for a new trial.   After remand to the district court, Thayer amended his complaint so as to state a cause of action under the Safety Appliance Act of 1893 (Act Cong. March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. §§

8605-8612]) as amended by the Act of Congress of April 14, 1910, c. 160, 36 Stat. 298 (S. S. Comp. St. §§ 8617-8619, 8621-8623), and the federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. §§ 8657-8665]). The material paragraphs of the amended complaint, after stating the facts leading up to the alleged injury, alleged the facts as follows:

"(4)   That plaintiff charges that the hand brake and hand brake appliance or apparatus on said car, at the time he attempted to set the same and retard the speed of said car and stop said car as aforesaid, was defective and unsafe, and was inefficient and not adapted to the purpose for which it was intended to be used.   That the defendant was negligent in not maintaining the said car with efficient hand brakes and was negligent in hauling, permitting to be hauled, in using, permitting to be used, and in moving or permitting to be moved the said car, upon its line of railway, said car at such time not being equipped with efficient hand brakes.   That the defective condition of such inefficient hand brakes upon the said car could by the exercise of ordinary care and caution have been ascertained and repaired.   That the specific defect in said inefficient hand brake on said car was at the time of the accident and injury to plaintiff and is at the present time to plaintiff unknown.

"(5)   That the said injury to plaintiff resulted from the negligence of the officers, agents, and employes of said defendant company, as hereinbefore set forth, and by reason of the defect and inefficient hand brake and hand brake equipment and appliances on said car due to the negligence of the defendant as hereinabove set forth; and from the hauling, permitting to be hauled, using, permitting to be used, and moving, or permitting to be moved the said car aforesaid so equipped with defective and inefficient hand brake, hand brake appliances and apparatus, upon its said line of railway.

"(6)   That the carelessness and negligence of the defendant, hereinabove set forth and the hauling and permitting to be hauled, the using or permitting to be used, or the moving or permitting to be moved of said car aforesaid, upon its line of railroad, and the defective and inefficient hand brake and hand brake appliance and equipment hereinabove set forth, were the proximate cause of plaintiff's injury."

An answer was filed setting up various defenses and a general denial.   Contributory negligence was also pleaded.   A reply was filed and the case was tried to a jury.   Appellant testified as a witness, and among other

facts stated that he had had some previous experience as a brakeman, or in setting brakes on a railroad car; that when he attempted to set the brakes on the car in question, in the ordinary manner, the brakes would not "take hold"; that you could tell, by the vibrations in the brake, as to whether it was taking hold of the wheels and functioning, when the brake was applied; that the brake in question did not respond when he attempted to operate it and did not take hold of the wheels and function, and the application had no effect whatever on the speed of the car. The above is not in the exact language of the witness, but is the substance of his testimony. Other witnesses also testified that the man applying a hand brake on a railroad car could tell whether it was functioning by the vibrations in the brake. There was also evidence on the part of appellee to the effect that appellant had not properly applied the brake, in that he had permitted the car to acquire too much "headway" before attempting to apply the brakes.

The court instructed the jury as to the federal Employers' Liability Act, which gives a cause of action for injuries (eliminating all that is not applicable to this case) suffered, "by reason of any defect or insufficiency, due to negligence, in its cars, engines," etc.

The court also instructed as to the Safety Appliance Acts and the particular portion thereof applicable hereto, namely:

"That it is unlawful for any common carrier engaged in interstate commerce by railroad to permit to be hauled or used on its line any box or other house car which is not equipped with efficient hand brakes."

After announcing these rules of law, the court at the request of the appellant gave the following instructions:

"The court further instructs you that if you find that the car in question, being the car from which the plaintiff was thrown, if you find that he was thrown from said car, was a car being used in interstate commerce by a common carrier by railroad engaged in such interstate commerce, and if you

find that said car at the time of the alleged injury, if any there was, was being used, moved, or hauled, or was permitted by the defendant company, or its employes, to be moved, used, or hauled on its line of railroad in such interstate commerce, and that said car was not then equipped with efficient hand brakes, if you so find that it was not so equipped with efficient hand brakes, then you are instructed that the plaintiff is not required to show negligence on the part of the defendant company or any of its officers or employes.

"The court further instructs you that in event you should find from the evidence that the plaintiff was at the time of the injury, if any there be, engaged in interstate commerce, and the defendant was at such time a common carrier by railroad engaged in interstate commerce, and that at such time the defendant company was using or permitting to be used, hauling or permitting to be hauled, or moving or permitting to be moved, a car loaded with interstate commerce, upon its line of railroad, and that such car at such time was car No. 22445, Fruit Growers' Express, and was not equipped with efficient hand brakes, then and in that event you shall find the issues in favor of the plaintiff and assesses his damages, if any there be."

All of the foregoing instructions were given to the jury at the request of the appellant. Upon the request of the appellee, the following instruction was given:

"You are instructed that in cases of this kind you cannot infer or presume that the brakes were inefficient, unsafe, or defective from the sole fact, if it is a fact, that, the plaintiff, Thayer, was not able to set the brake upon the car in question in time to prevent its collision with the engine upon the main line. You must go further and be able to say from the evidence that the brake was not in condition at the time of the accident to have stopped the car when properly applied. In other words, that because of some defect or insufficiency in the hand brake or hand brake rigging, that such hand brakes would not, when properly applied, perform their duty for which they were intended."

Special interrogatories were submitted to the jury at the request of counsel for appellant, the ones material and the answers thereto being as follows:

"No. 3. Was the hand brake rigging on the F. G. R. car No. 22445, in any manner defective? Answer: We do not know.

"No. 4. If you find that the brake rigging was defective in any manner or particular, state what the defect was? Answer: We do not know.

"No. 5. If you find that the brake rigging was defective, could the plaintiff, Thayer, by the exercise of due caution and testing of the hand brake when he first mounted the car, have discovered such defective condition of the hand brake? Answer: We do not know.

"No. 6. Was the defendant company negligent in any respect within the issues of the case? Answer: We do not know."

The jury returned a general verdict in favor of appellant, assessing his damages in the sum of $5,500. Appellee moved for judgment on the special interrogatories and answers thereto, which motion was sustained and judgment for appellee was entered. To review this judgment this appeal is prosecuted.

The single question presented by the appeal is as to whether the special finding of facts is inconsistent with the general verdict, but the question stated requires the consideration of several different propositions in order to arrive at a correct answer thereto.

[1,2] First, as to the effect of the special findings: It is well settled that special findings of a jury will not justify the setting aside of a general verdict, unless such findings are in irreconcilable conflict with the general verdict. Upton v. Santa Rita, 14 N. M. 96, 89 Pac. 275; Gallegos v. Sandoval, 15 N. M. 216, 106 Pac. 373; Leyba v. Albuquerque & Cerrillos Coal Co. 25 N. M. 308, 182 Pac. 860; Thompson on Trials, § 2691. The special interrogatories submitted should call for findings upon material issues, raised by the pleadings, and, before such findings will overthrow the general verdict, they must be antagonistic thereto upon the ultimate issue or issues necessarily determined by the general verdict.

[3] The answer by the jury to an interrogatory, "We don't know," is equivalent to a finding against the party holding the affirmative upon such fact. Hilligoss v. M., K. & T. Ry. Co., 84 Kan. 372, 114 Pac. 384. Thus two questions, viz., was the brake rigging defective, upon

the car in question, and was the appellee negligent in any respect within the issues of the case, must be resolved against the appellant. If these questions, so determined against the appellant, were the ultimate issues, upon which his right of recovery was grounded, without affirmatively establishing which he would be precluded from a recovery, then the judgment of the trial court is invulnerable, and it must be sustained. The solution of the question depends upon the issues framed by the pleadings, and submitted to the jury for determination, under the instructions by the court, upon the evidence adduced, and the applicable law.

[**4,5**] The pertinent provision of the amendment of 1910 to the federal Safety Appliance Act of 1893 (chapter 160, 36 Stat. 298 [U. S. Comp. St. § 8618]) reads as follows:

. "Sec. 2. That on and after July first, nineteen hundred and eleven, it shall be unlawful for any common carrier subject to the provisions of this act to haul, or permit to be hauled or used on its line any car subject to the provisions of this act not equipped with appliances provided for in this act, to wit: All cars must be equipped with secure sill steps and efficient hand brakes. * * *"

Section 3 of the act (section 8619) provides for the designation by the Interstate Commerce Commission of standardized equipment, under the terms of the act, with power on the part of the commission to postpone the installation of such standardized equipment for designated periods.

At the time of the injury complained of in this case, it is conceded by both parties that the commission had specified the standardized hand brake, but that appellee had five years' time from the making of the order within which to equip its cars with such equipment. It is not, however, disputed that appellee was required, under the act in question, to have its cars, and all cars used on its lines, equipped with "efficient hand brakes."

Under the statute invoked by the appellant, conceding

the injury for which a recovery was claimed, the ultimate issue was as to whether the car in question, at the time of the accident was equipped with an ''efficient hand brake,'' and this resolved in the negative, the question remained whether such failure was the cause of the injury. The action being based upon a claimed violation of the Safety Appliance Act, the defense of assumption of risk and contributory negligence are eliminated by the Employers' Liability Act, c. 149, §§ 3, 4, 35 Stat. 65, 66 (U. S. Comp. St. §§ 8659, 8660); Spokane & Inland Empire R. R. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125; U. P. R. R. Co. v. Huxoll, 245 U. S. 535, 38 Sup. Ct. 187, 62 L. Ed. 455. In the latter case the court said:

"The federal Employers' Liability Act of April 22, 1908, 35 Stat. 65, is confessedly applicable to the case, and the rule of liability prescribed by this and the Safety Appliance Act of March 2, 1893, 27 Stat. 531, is, as the trial court charged, that, if the failure to have the power brake in working order contributed 'in whole or in part' to cause the death of deceased, the plaintiff in error would be liable in damages, and neither contributory negligence nor assumption of risk could avail the company as a defense or in dimininshing the damages."

The answer, by the jury to the special interrogatory, as to whether the appellee ''was negligent in any respect within the issues of the case,'' is wholly immaterial, since the statute imposes an absolute and unqualified duty upon the carrier to see that its cars are equipped with ''efficient hand brakes.'' St. Louis Iron Mt. Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago, B. & Q. Ry. v. U. S., 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. St. Louis & San Francisco R. R., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Texas & Pacific Ry. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874.

[6,7] Eliminating all immaterial questions from consideration, many such having been advanced by appellant, we come then to the controlling one, as to whether the finding that the hand brake rigging was not defec-

tive was equivalent to a finding that the car was equipped with an efficient hand brake, or, stated conversely, that the hand brake was not inefficient.

The word "efficient" is defined by the Century Dictionary as follows:

(1) "Producing outward effects; of a nature to produce a result; active; causative."

(2) "Acting or able to act with due effect; adequate in performance bringing to bear the requisite knowledge, skill, and industry; capable; competent."

The antonym of "efficient" is "inefficient," which is defined by the same authority as follows:

"Not efficient; not producing or not capable of producing the desired effect, incapable; incompetent; inadequate."

"Defective" is defined as "having defect or flaw of any kind, imperfect; incomplete; lacking; faulty."

It will be noted that "defective" is not used as the antonym of "efficient," and no lexicographers, so far as we know, so use it. It is true, there are cases which imply that "defective" is synonymous with "inefficient" (Geloneck v. Dean Steam Pump Co., 165 Mass. 202, 43 N. E. 85; Kansas City, M. & B. R. R. Co. v. Burton, 97 Ala. 240, 12 South. 88). And the Supreme Court of the United States has used the word "defective" in speaking of a coupler which failed to work (San Antonio, etc., R. R. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110), and of air brakes which failed to function (Spokane, etc., R. R. Co. v. Campbell, 241 U. S. 503, 36 Sup. Ct. 683, 60 L. Ed. 1125), and of ladders which were insecure (Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874); but in each case the language of the Safety Appliance Act was different, and there was no point made, as here, that a hand brake might be inefficient, and not necessarily defective. The construction of the words

employed in a statute must always be more or less influenced by the evident intent of the statute, illustrated by its various provisions.

In Lewis-Sutherland Statutory Construction, vol. 2, § 390, it is said:

"As a general rule, the words of a statute are to be taken in their ordinary sense, unless it plainly appears from the context or otherwise that they were used in a different sense. In the construction of statutes a word which has two significations should ordinarily receive that meaning which is generally given to it in the community; but, when this construction would contravene the manifest intention of the Legislature, we must depart from this rule and give effect to the intention."

We think the ordinary meaning of the word "efficient," as applied to a hand brake or an appliance of any kind, would be as to whether it was able to produce the expected results when properly applied. Thus a hand brake, upon a railroad car, is expected to bring the car to a stop within a certain distance, under given conditions, when properly applied. If it is able to do so, then it would be deemed efficient. Now, by reason of its construction, its manner of operation, its size, or various other conditions supposable, it might not produce the desired result, and however applied or operated it might not stop the car. The workmanship on the brake, and all its parts, might be perfect. It might have no defect or flaw of any kind and might be perfect and complete, and yet not efficient. A defect presupposes a perfect model or pattern, but by reason of some flaw, or faulty construction, or something lacking or some imperfection, the appliance intended to be constructed, when completed is defective, or by reason of some intervening cause, some part of the appliance breaks or becomes unfit for the use intended. For example, suppose a locomotive engine is in perfect working order, and is fully capable of drawing twenty loaded freight cars. It is attached to 50 loaded freight cars. The engine would be inefficient to discharge the duty of drawing the in-

creased number of cars, but could it be said, because it was incapable of pulling the doubled load, that it was defective.

Appellee contends, however, that by subsequent language employed in the same act, Congress defined the converse of each of the words "secure" and "efficient" by using the terms "insecure" and "defective." If this be true, then of course it is clear that we should give to the word "efficient" the construction for which appellee contends.

Appellee's contention is based upon the language employed in sections 4 and 5 of the amendment of 1910 (U. S. Comp. St. §§ 8621, 8622). It would unduly lengthen this opinion to set out all of the various provisions of the act of 1893 and the amendments thereto of 1903 (U. S. Comp. St. §§ 8613-8615) and 1910. It is sufficient to say that the original act provided for the use of power brakes and automatic couplers, coupling automatically by impact, also required cars to be equipped with secure grabirons or handholds in the ends and sides of each car and provided for a standardized height of drawbars. By the second section of the amendatory act of 1910 (U. S. Comp. St. § 8618), it was made unlawful for any common carrier, subject to the provisions of the act, to haul or permit to be hauled or used on its line any cars not equipped with "secure sill steps and efficient hand brakes." "All cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards; and all cars having ladders shall also be equipped with secure handholds or grabirons on their roofs at the top of such ladders." Section 3 of the same act (section 8619) provided that within six months from the passage of the act the Interstate Commerce Commission, after a hearing, should designate the number, dimensions, locations, and manner of application of the appliances provided for by section 2 of the act and section 4 of the act of March 2, 1893, and should give notice

to all common carriers of its determination, and further provided:

"And thereafter said number, location, dimensions, and manner of application as designated by said commission shall remain as the standards of equipment to be used on all cars subject to the provisions of this act, unless changed by an order of said Interstate Commerce Commission."

Failure to comply with any such requirements of the Interstate Commerce Commission made the offending carrier subject to a penalty.

Section 3 (section 8619) contains a proviso which placed it within the power of the Interstate Commerce Commission to extend the period within which any common carrier should comply with the provisions of the section with respect to the equipment of cars actually in service upon the date of the passage of the act. By the passage of this section it was the purpose of Congress to secure the standardization upon all railroads of the country of the various appliances and equipment so vitally affecting the lives and limbs of railroad employes. It fully realized the hardships and injustice of requiring the railroads to at once comply with the standardization of equipment which might be ordered by the Interstate Commerce Commission as to cars which were in use at the time of the making of the order. To relieve against the hardship Congress placed it within the power of the Interstate Commerce Commission, after it had issued the order fixing the standard of equipment, to suspend the taking effect of the order as to all cars in use at the time of the passage of the act. The purpose of this provision, of course, was to permit the railroads to gradually bring all cars to the required standard. Of course, where the Interstate Commerce Commission has prescribed the standard of the various appliances provided for in the act, there could be no question raised as to the efficiency of the standard device, absent any defect therein. In other words, if the standard equipment is used, it would only be some defect therein that would impose a liability

upon the carrier. As we have heretofore stated, it was agreed that the Interstate Commerce Commission had adopted a standard handbrake, but the appellee was given five years' time within which to comply with the order made by the commission therein. It has not contended that the hand brake in question was the standard brake adopted by such commission. But absent the applicability of the order of the Interstate Commerce Commission relative to handbrakes, or other appliances provided for by the statute, which they were to standardize, the railroad companies by the terms of the statute, and independent of any order of the Interstate Commerce Commission, were required to provide appliances which would meet the standard fixed by the statute.

In so far as the present case is concerned, absent any order by the Interstate Commerce Commission, they were necessarily required to equip their cars with "efficient handbrakes," and by the same section of the statute (section 8618) cars must likewise be equipped with "secure sill steps." Section 3 of the act in question (section 8619) made it unlawful for common carriers to use any car or vehicle in interstate or foreign traffic which did not comply with the standard fixed by the statute, or the standard to be prescribed by the Interstate Commerce Commission after such order by the commission became effective. Section 4 of the act (section 8621), and this is the section which uses the language upon which appellee based its claimed construction, provided a penalty of $100 for each violation of the act, which was the using, hauling, or permitting to be used or hauled on its line any car subject to the requirements of the act not equipped as provided in the act. In prescribing the penalties, Congress, of course, realized that railroad companies had their repair shops at fixed locations upon their lines and that the appliances which they were requiring the railroad companies to maintain upon their cars for the safety of employes might become impaired and defective upon the line of the railroad, and that the repairs thereto could only be made at repair shops, and

with this in view they added a proviso to section 4 which reads as follows:

"**Provided,** that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become **defective** or **insecure** while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be **defective** or **insecure** to the nearest available point where such car can be repaired, without liability for the penalties imposed by section four of this act or section six of the act of March second, eighteen hundred and ninety-three as amended by the act of April first, eighteen hundred and ninety-six, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employe caused to such employe by reason of or in conection with the movement or hauling of such car with equipment which is **defective** or **insecure** or which is not maintained in accordance with the requirements of this act and the other acts herein referred to; and nothing in this proviso shall be construed to permit the hauling of **defective** cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such **defective** cars contain live stock or 'perishable' freight."        (Italics ours.)

By the next section (section 5 [section 8622]) it was provided that, within the limit specified in the preceding section of the act, the movement of a car with defective or insecure equipment might be made without incurring the penalty, but—

"shall in all other respects be unlawful. Nothing in this act shall be * * * construed to relieve any common carrier, the Interstate Commerce Commission, or any United States attorney from any of the provisions, powers, duties, liabilities, or requirements of said act of March second, eighteen hundred and ninety-three, as amended by the acts of April first, eighteen hundred and ninety-six, and March second, nineteen hundred and three; and except as aforesaid, all of the provisions, powers, duties, requirements, and liabilities of said act of March second, eighteen hundred and ninety-three, as amended by the acts of April first, eighteen hundred and ninety-six, and March second, nineteen hundred and three, shall apply to this act."

The language of this section and the use of the words

"defective" and "insecure" therein, instead of supporting the construction for which appellee contends, we think justifies the contrary conclusion. The sections presuppose an original compliance with the act of the orders of the Interstate Commerce Commission. Specifically applying the language to a handbrake, the appliance involved in this case, sections 5 and 6 (sections 8622, 8623) presuppose that the car was originally equipped with an "efficient handbrake," or a standard brake, assuming that the order made by the Interstate Commerce Commission was applicable, and that the handbrake had become defective. In such event, Congress was undertaking to say what the railroad might do without incurring the penalty which it had prescribed. The railroad company would have no right in the first instance to haul upon its railroad a car for any distance that had not been originally equipped with an efficient handbrake. That contingency had already been provided for by the act. Congress had said that all cars must be so equipped. In section 5 it was amply taking care of a case where the theretofore "efficient handbrake" or other appliance prescribed had become defective.

Indulging every reasonable presumption as we must in favor of the general verdict, it must be held that a finding that a handbrake upon a railroad car was not defective did not override a general verdict which was necessarily based upon a finding that the handbrake was inefficient. The jury under the evidence doubtless concluded that because the brake in question did not take hold of the wheels and function in the usual manner, it was inefficient. It was possibly not able to say that the inefficiency was due to a defect, as there had been no evidence as to any specific defect in the brake apparatus; but the brake would not properly function, and from this fact the conclusion was drawn that it was inefficient. We cannot see that the inference was not justified under the evidence.

For the reasons stated, the court erred in setting aside

the verdict and entering judgment for appellee upon the interrogatory in question. The cause will be reversed and remanded to the district court, with instructions to set aside the judgment in favor of appellee and to over-rule the motion of appellee for judgment on the special interrogatories and to proceed in accordance with this opinion, and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.