**UNITED STATES v. ANDERSON.**

No. 7244.

Circuit Court of Appeals, Ninth Circuit.

April 12, 1934.

Carl C. Donaugh, U. S. Atty., Mason Dillard, Asst. U. S. Atty., and Francis T. Wade, Associate Atty., U. S. Veterans' Administration, all of Portland, Or., for the United States.

J. N. Helgerson, of Portland, Or., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

This was an action to recover on a contract of war risk term insurance. It is alleged in the complaint and admitted in the answer that plaintiff joined the military forces of the United States of America on April 16, 1917, and was honorably discharged from said service on October 24, 1919; that during said service plaintiff applied for and there was issued to him by the defendant a policy of war risk insurance in the sum of $10,000, by the terms of which defendant agreed to pay plaintiff, in case of total and permanent disability, the sum of $57.50 per month from the date of the said discharge, and that the premiums were paid thereon to and including June 1, 1926. It is further alleged: "That while serving with said military forces, plaintiff contracted chronic bronchitis common, pulmonary tuberculosis and that by reason thereof was at the time of his discharge and subsequent thereto, and will ever be permanently and totally disabled"; that plaintiff made due proof to the defendant of such disability on

538

June 6, 1931, and demanded a rating to that effect; that defendant disallowed said claim; and that a disagreement exists between defendant and plaintiff as to said claim. The answer admits the disagreement as alleged.

The cause was tried to a jury and resulted in a verdict for the plaintiff, from which verdict the judgment appealed from was entered. At the close of all the evidence the defendant made a motion for a directed verdict in its favor upon the ground that the evidence "fails to establish that the plaintiff became totally and permanently disabled on the date and time alleged in plaintiff's complaint." The defendant's assignment of error is based entirely upon the order of the court in overruling said motion. However, on the oral argument in this court the defendant for the first time contended that the plaintiff's complaint wholly fails to state a cause of action, in that it fails to allege specifically that the plaintiff became totally and permanently disabled while his policy of insurance was in force and effect. We will dispose of this contention before addressing ourselves to the question presented in the assignment of error.

The material portions of the complaint and answer are set forth above. No demurrer was filed to test the sufficiency of the complaint to state a cause of action, nor was there a motion to make the allegations thereof more definite and certain. Issue was joined and the trial proceeded without the alleged defect in the complaint being called to the attention of the court either during the trial or at any later time. Evidence was offered by the respective parties on the question of total and permanent disability during the life of the policy, and the court instructed the jury on that issue as follows:

"Now, there is only one question for you gentlemen to decide and that is, was the plaintiff totally disabled and permanently disabled prior to the first day of July, 1926; I mean between the times, or after his policy was procured and before it expired. In other words, did he become totally and permanently disabled during the life of this policy and while it was in full force and effect."

No exception was reserved to such instruction. It will thus be seen that this instruction covers the very point raised by the defendant, and that the court expressly instructed the jury that the disability must have occurred during the life of the policy. Under the circumstances, we think the rule announced by the Supreme Court in the case of Lincoln Twp. v. Cambria Iron Co., 103

U. S. 412, 415, 26 L. Ed. 518, should be applied here:

"It is a rule of the common law that where there is any defect or omission in a pleading, whether in substance or form, which would have been fatal on demurrer, yet, if the issue joined be such as necessarily required on the trial proof of the facts so defectively stated or omitted, and without which it is not to be presumed that the judge would have directed the jury to give the verdict, such defect or omission is cured. [Stennel v. Hogg] 1 Wms. Saund. 228. Or, as it has been tersely put, a verdict cures a defective statement of a title or cause of action, but not the statement of a defective title or cause of action. 1 Wms. Saund. 228 c, note."

See, also, San Antonio & A. P. R. Co. v. Wagner, 241 U. S. 476, 480, 36 S. Ct. 626, 60 L. Ed. 1110; United States v. Hill (C. C. A. 2) 34 F.(2d) 133.

The appellant-defendant's assignment of error presents only one question, namely, whether there was sufficient evidence of total and permanent disability while the policy was in force to warrant the submission of the case to the jury.

As stated by this court in the case of United States v. Scarborough, 57 F.(2d) 137:

"The applicable rules of law in cases of this character are so familiar and have been so often announced by this and other courts in recent cases that it would seem futile to refer to or repeat them here. It is fundamental that this court, in determining the question here presented, must view the evidence in the light most favorable to the appellee, and must affirm the findings and conclusions of the trial court if they are supported by any substantial evidence."

At the outset we have the certificate of disability for discharge, dated October 10, 1919, based upon the report of the board of medical examiners showing that the plaintiff was "disabled 8/12 from earning subsistence." The said certificate states that:

"Plaintiff was recommended for discharge on account of (1) Tuberculosis, pulmonary, chronic, inactive, entire left lung; (2) pleurisy, chronic, fibrinous, base left lung; became unfit for duty from pneumonia April 14, 1918, when on duty with Battery 'C', 151st Field Artillery; disability was incurred in line of duty.

"The said certificate was based upon the report of the Board of Medical Examiners, which shows that they found plaintiff unfit for service as a soldier because of (1) Tuber-

culosis, pulmonary, chronic, inactive, entire left lung; (2) Pleurisy, chronic, fibrinous, base left lung. There is impairment from the sixth rib and eighth spine up left with pleuritic rub left base; afebrile; sputum negative; general condition good. Shows no tendency to break down under work. Chest condition stationary since admission. Has made the maximum possible improvement. The disability did not exist prior to enlistment and did originate in line of duty. Length of time case has been under observation by one or more members of the Board, 4½ months. In view of occupation, he is disabled 8-12 from earning subsistence. The soldier did not decline treatment for the relief of disability."

There was testimony tending to show that for approximately two years after plaintiff's discharge from the Army he and his brother operated a dairy farm, the latter and his four boys doing the work and plaintiff doing the "bossing" and planning of the work; that at that time plaintiff had a "continual cough" and "sharp bronchial pains continually that felt like separating the ribs from the lungs, as though somebody took a knife and was drawing it down there"; that he raised considerable sputum and had considerable pain in the left lung. Plaintiff testified: "The pain was so severe at times that I would have it [the left lung] taped or strapped. My wife is a nurse and she would take a wide piece of adhesive tape and commence at the backbone and draw it around to the breastbone to keep the lung from working as much as possible. When I would breathe the pains would be so severe. * * * For diet I drank lots of milk and ate lots of eggs and slept out of doors as much as possible and took my rest periods. By rest periods I mean a period of lying in bed or lying down somewhere an hour or two hours every day, taking a complete rest, not doing anything, just resting and getting as much sleep as possible. Ten hours, if possible, I slept at night. We have always had to forego any socials or anything of that kind at night. We would not be able to do that and get my rest so I did not take those things in."

Plaintiff remained on this farm for approximately two years and then moved to another farm where he remained until December, 1926, except for about four months spent in a hospital in 1922. "During that period of time [while on the farm] I looked after the operation of the place and looked out for the work to see that it was carried out as much as I was able and if I did not, my wife did that part for me."

Plaintiff then moved to a third farm where he remained until September, 1931. His physical condition did not improve, and since the latter date he has performed no labor of any consequence.

Plaintiff further testified:

"At the present time my left chest is very much sunken; the lower part (indicating) the ribs have caved in and I have considerable pain from that part of the chest at times, especially in drawing a deep breath. My chest became in that condition after an attack of pleurisy during the war and was in that condition when I was discharged. At the time I take a deep breath, my left chest does not expand as the right one does. Across this part of the chest (indicating) it feels as though there was something adhering; something that wants to pull apart like a piece of tissue paper. It is a constant pain; it is more severe at times than at others, but it feels just like somebody was taking a knife and tearing it open between the chest wall and cavity and the ribs and the lung.

"Since leaving the army any physical exercise has always tired me very much. My chief complaint is lack of pep, that is, I can not do much. The shortness of breath under any exercise of any kind, that is it kind of causes the heart to beat the least bit rapidly or causes the breath to become rapid—I get very short of breath. I cough considerably also; I am bothered by that cough. There has not been any time since I got out of the army that I have operated any farm without the assistance of any other person."

Other witnesses testified to plaintiff's poor physical condition from the date of his discharge from the Army to the date of the trial, and plaintiff's wife, who prior to her marriage was a Red Cross nurse, testified to his condition from February, 1920. In addition thereto, two physicians called by the plaintiff testified that in their opinion plaintiff was totally and permanently disabled at the time of his discharge from the Army and remained so up to the date of the trial, and expressed the further opinion that such condition would continue throughout plaintiff's life. It is, we think, unnecessary to set forth such testimony in detail. Suffice it to say, it tends to substantiate plaintiff's claim.

We cannot say that the testimony with reference to plaintiff's work record is sufficient to overcome the testimony in support of

the claim of total and permanent disability. In other words, we think there was substantial evidence on behalf of the plaintiff which, if believed by the jury, fairly tended to show that at the time of plaintiff's discharge and continuously thereafter plaintiff was disabled, not only 8/12ths but totally and permanently disabled within the meaning of the War Risk Insurance Act (38 Stat. 711, as amended) and the regulations promulgated thereunder.

Affirmed.