**CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Plaintiff-Appellee,**

v.

**ALVA COAL CORPORATION and Peabody Coal Company, Defendants-Appellants.**

No. 15357.

United States Court of Appeals Seventh Circuit.

July 6, 1966.

Rehearing Denied Aug. 16, 1966.

David E. Rosenfeld, Robert G. Wolfe, Terre Haute, Ind., for appellants.

William P. Wooden and Henry J. Price, Indianapolis, Ind., Barnes, Hickham, Pantzer & Boyd, Indianapolis, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

HASTINGS, Chief Judge.

Alva Coal Corporation, a Kentucky corporation, engaged in coal mining in Indiana, and Peabody Coal Company, an Illinois corporation, defendants-appellants,[1] have appealed from a final judgment entered against them in favor of Chicago, Milwaukee, St. Paul and Pacific Railroad Company (railroad), a Wisconsin corporation. The railroad instituted this diversity action against Alva for indemnity or contribution for a payment made by the railroad in settlement of negligence litigation instituted against it by one of Alva's employees, Troy Scroggins. The jury found that the railroad was entitled to contribution from Alva in the sum of $61,452.06, and the court entered judgment accordingly.

On appeal, Alva relies on errors in instructions, rulings on evidence, and the trial court's refusal to grant its respective motions for judgment on the pleadings, summary judgment, directed verdict, new trial, and refusal to sustain Alva's motion for judgment notwithstanding the verdict.

As a part of its mining operations in Indiana, Alva operates a railroad siding, a part of the track of which lies beneath a coal tipple. The tipple is used to load empty railroad cars by gravity.

Each working day, an employee of Alva, known as the "empty car dropper", receives instructions concerning the type of coal cars to be brought down to the tipple. The empty car dropper moves empty coal cars downhill by gravity to the tipple track from the empty coal car storage track. In order to bring down coal cars of the desired type to the tipple, the empty car dropper uncouples cars, which are coupled in strings on the storage track, and brings the desired cars down by releasing the hand brakes. He rides on the cars as they roll down, and if the string of empty cars being moved begins to roll too fast, he applies the handbrakes to slow them.

On November 2, 1962, Gordon K. Wright, an employee of Alva, was engaged in his duties as an empty car dropper, bringing a string of empty cars down to the tipple. Customarily, Wright would bring three or four cars down at a time. On this particular day, he did not find slack in the couplings between cars on the storage track, sufficient to enable him to uncouple cars, until he came to the couplings between the eighth and ninth cars of a string of cars. While Wright apparently intended to uncouple these two cars and then release the handbrakes on the eighth car so that it would roll down to create slack between the seventh and eighth cars, and so on, until there was sufficient slack between the third and fourth cars to permit uncoupling, when he released the handbrake on the seventh car, the entire string of eight cars began to roll downhill.

The last three cars of the eight cars in the string which began to move down the hill had been delivered to Alva by the railroad the day before and had been in the custody and control of Alva since delivery. The first five cars in the string were cars which had been delivered to Alva by the Pennsylvania Railroad Company.

---

1. Shortly before the commencement of this action, Alva Coal Corporation was liquidated and all its properties and assets were transferred to Peabody Coal Company. Peabody succeeded to and assumed all the rights, interests, and obligations of Alva. Peabody was added as a party defendant in this suit. Defendants-appellants will be referred to herein as Alva.

At the time Wright was attempting to bring down the eight cars, Troy Scroggins was working in front of a railroad car at the tipple, attempting to move it beneath the tipple. The car with which Scroggins was working was between Scroggins and the eight cars Wright was bringing down from the storage tracks onto the tipple tracks.

When the cars had begun to roll downhill together, the brakes on the first and sixth cars in the string had apparently been set; and as the cars rolled, Wright set the handbrakes on the seventh car and then on the second and third cars. The string did not stop, however, but ran into the rear of the car in front of which Scroggins was working. This car was pushed over Scroggins, cutting off his arm and leg.

After the accident, the cars were inspected. The handbrakes were found to be set on the sixth, seventh, and eighth cars. No defects were found in any of the handbrakes, except that on the first car: its handbrake was disconnected.

At the trial, there was testimony that, in the fact situation described above, the handbrake on the sixth car, a car delivered to Alva by the railroad, would have held the runaway string if it had been efficient.

Scroggins instituted an action against the railroad and the Pennsylvania Railroad Company, alleging violation of the Safety Appliance Act, 45 U.S.C.A. § 11,[2] through the hauling and use of cars not equipped with efficient hand brakes. This suit was settled by compromise when the railroad and the Pennsylvania Railroad each paid Scroggins $117,500.00.

There was a sidetrack contract between the railroad and Alva which applied to the mine where the accident occurred. This contract provided in pertinent part:

"9.  *  *  *

"The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

"  *  *  *.

"11. The Railroad Company shall not be obligated to operate over that portion of said track lying beneath the coal tipple, and the Industry agrees that it will operate and handle all cars over said portion of the track beneath the coal tipple and over the track scale with its own means and forces, and at its own sole cost, expense and risk."

Prior to settlement of the Scroggins suit, Alva was invited by the railroad to assume the defense of the action. Alva declined. Expressly denying liability, Alva also informed the railroad that it would not challenge the $117,500.00 settlement as unreasonable.

The railroad's complaint against Alva for indemnity and contribution contained, in paragraph 8, the following allegations of negligent acts and omissions:

"(a) The defendant, by its employee, Gordon K. Wright, attempted to move too many cars at one time under the circumstances, considering the slope of the hill, the available distance within which to stop such cars before striking the car in front of which Troy Scroggins was working, and the wet condition of the rails.

---

2.  "It shall be unlawful for any common carrier subject to the provisions of sections 11–16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in said sections, to wit: All cars must be equipped with secure sill steps and efficient hand brakes;  *  *  *." 45 U.S.C.A. § 11.

"(b) The defendant, by its employee, Gordon K. Wright, allowed the group of cars to roll freely for too long a time and to gain too much momentum before attempting to apply brakes.

"(c) The defendant assigned Troy Scroggins duties and provided him with a place to work which required or permitted him to be between the rails of the tipple tracks and in front of an empty car which was between him and the group of eight cars and which interfered with his view.

"(d) The defendant authorized and permitted a single employee to attempt to move too many cars at one time under the circumstances then and there existing.

"(e) The defendant, by its employee, Gordon K. Wright, failed to inspect or test the hand brakes on the cars to determine whether they were effective.

"(f) The defendant, by its employee, Gordon K. Wright, failed to sound the warning device and failed to give any other warning to Troy Scroggins after the defendant knew that the group of eight cars was out of control and could not be brought to a stop before striking the car in front of which Troy Scroggins was working.

"(g) The defendant, by its employee, Gordon K. Wright, failed to set the brakes properly on the group of eight cars after they began to move.

"(h) The defendant, by its employee, Gordon K. Wright, failed to set any brakes on the first six cars in the group of eight cars.

"(i) The defendant, by its employee, Gordon K. Wright, failed to seek assistance before attempting to disconnect and move eight cars, more than could be handled safely at one time by one man.

"(j) The defendant failed to have any other employees assisting Gordon K. Wright in moving the group of eight cars.

"(k) The defendant failed to instruct other employees on the use of the warning device.

"(l) The defendant failed to have any employee at or near the operating mechanism of any of the warning devices at a time when Gordon K. Wright was attempting to disconnect and move too many cars at one time.

"(m) The defendant failed to give Troy Scroggins any warning after the group of eight cars began to roll toward him.

"(n) The defendant failed to provide Troy Scroggins a safe place to work.

"(o) The defendant permitted or directed Troy Scroggins to work between the rails of the tipple tracks and on the downhill side of an empty car.

"(p) The defendant failed to notify Troy Scroggins that the defendant was attempting to uncouple and move eight cars at a time when Troy Scroggins was working between the rails on the downhill side of an empty car on the same track.

"(q) The defendant failed to promulgate safety rules designed to avoid an accident such as that which occurred.

"(r) The defendant failed to instruct its employees as to its safety rules.

"(s) The defendant failed to enforce its safety rules and failed to see that its safety rules were obeyed."

I

On appeal, Alva contends that the contribution issue should not have been submitted to the jury. The sidetrack contract provided contribution only if the liability respecting which contribution is sought arose from the *joint or concurring negligence* of Alva and the railroad.

The trial court instructed the jury that a violation of the Safety Appliance Act by the railroad through furnishing Alva with a railroad car with a defective handbrake would constitute negligence *per se*. It further instructed the jury that if such negligence *per se* combined with the negligence of Alva or any of its employees to proximately cause Scroggins' injury, it should return a verdict for the railroad for contribution.

Alva argues that the railroad's liability arose from the violation of the absolute duty to have safe equipment; a duty imposed, without regard to negligence, by the Safety Appliance Act. Alva's liability to Scroggins is claimed to arise solely out of the duty imposed on it, without regard to negligence, by the Indiana Workmen's Compensation Act, Burns Ind.Stats. § 40–1218 (1965 Repl.). Thus, Alva contends, there was no negligence within the meaning of the sidetrack contract. Negligence under the sidetrack contract is asserted to be a breach of a legal duty owed someone by the failure to use ordinary care. In other words, according to Alva, negligence *per se* is not within the meaning of joint or concurring negligence as required by the sidetrack agreement.

■ More specifically, Alva asserts that because it is covered by the Indiana Workmen's Compensation Act, it was not under any legal duty to exercise reasonable care to provide Scroggins with a safe place to work or otherwise exercise the care exacted at common law from an employer for an employee.

We find that this argument confuses liability and duty. To say that a law imposes liability regardless of duty does not dissolve duty. It must be remembered that liability is found as a precedent to compensation for injury; but, as has often been noted, compensation for injury is provided for lack of a better remedy; it does not restitute the whole man. The legal duty to exercise reasonable care is a responsibility created to preserve men from injuries as well as to compensate for them: a duty is not equivalent to the liability which attaches to its breach.

But, Alva argues that even if the Indiana Workmen's Compensation Act does not protect it from suit, the contribution clause in the sidetrack contract exposed it indirectly to a liability, the direct imposition of which was prohibited by the Indiana Workmen's Compensation Act, for amounts greater than statutory benefits.

■ While as a matter of operation of law, with respect to statutes such as those permitting contribution between joint tort-feasors, an employer would not be indirectly held to greater liability than he would be held to directly, an employer is not prohibited from voluntarily assuming and binding itself to provide a greater liability than the Indiana Workmen's Compensation Act imposes. This, of course, directly raises the question of the fair construction of the sidetrack contract with respect to Alva. At this point, we hold that, under the Indiana Workmen's Compensation Act and, under the facts of this case, the trial court did not err in submitting the question of Alva's concurring negligence, under the sidetrack contract, to the jury.

Alva raises arguments similar to those above with respect to the railroad's liability. That is, as stated, Alva claims that the railroad's liability is an absolute liability arising from violation of a safety statute and that such liability does not constitute negligence within the meaning of the sidetrack contract.

■■ In Indiana, violation of a duty prescribed by statute or ordinance is negligence *per se*. New York Central Railroad Co. v. Glad, 242 Ind. 450, 457, 461, 179 N.E.2d 571 (1962), and cases cited there. The United States Supreme Court has noted that violations of the Safety Appliance Acts constitute negligence *per se*. Urie v. Thompson, 337 U.S. 163, 189, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); San Antonio Ry. v. Wagner, 241 U.S. 476, 484, 36 S.Ct. 626, 60 L.Ed. 1110 (1916).

Negligence *per se* may be negligence by legislative fiat, that is, negligence as a matter of law. While this is so, it does not mean that a violation of a safety statute might not also be negligence as a matter of fact. The effect of legislatively establishing violation of a statute as negligence *per se* is to dispense with putting an injured party to the proof that the violation was in fact negligence. Urie v. Thompson, supra. In this respect, it is noteworthy that in Indiana, where compliance with the provisions of a statute or ordinance was impossible or excusable, the violation, instead of being negligence *per se*, becomes *prima facie* evidence of negligence. *New York Central*, supra, 242 Ind. at 458, 179 N.E.2d 571.

With these considerations in mind, we hold that the meaning of the negligence clause in the sidetrack contract included negligence *per se*, as it is found in Indiana law.

## II

As another ground of error, Alva contends that its motions for directed verdict and judgment should have been granted because the record compels the conclusion that the sole proximate cause of Scroggins' injuries was a defective handbrake in one or more railroad cars in the runaway string.

At the outset, we note that in considering Alva's motions, the district court is required to consider the evidence in the light most favorable to the plaintiff. Lee v. Terminal Transport Co., 7 Cir., 269 F.2d 97, 99 (1959).

We understand Alva to contend that the railroad must show that *after* the string of eight cars began to move, there was some specific thing Alva should or should not have done in the exercise of reasonable care in time to have avoided injuring Scroggins. While the railroad did make a showing with respect to Alva's duties after the cars began to move, we do not perceive that Alva's concurring negligence must have occurred only or solely after the cars began to

move. What Alva should have done or failed to do prior to the movement of the cars is as relevant as what its duties were after the cars began to move. Inefficient brakes may have been the sole cause of the original motion and loss of control of the string of cars, but that does not mean they were the sole cause of the accident. The accident, of course, would not have occurred if the string had not run away; but then, it also may not have occurred had Alva inspected the railroad cars in the string before attempting to move them, or if Alva's employee had warned Scroggins, or for any number of other reasons within Alva's control.

Upon a review of the record, we find that there is sufficient evidence to support a jury finding that a defective handbrake on one or more railroad cars was not the sole proximate cause of Scroggins' injuries.

## III

Alva asserts that the trial court erred in denying its motion to withdraw from the jury paragraph 8(a) through 8(p), supra, of the railroad's complaint and in instructing the jury with respect to the allegations contained therein. It is claimed that the evidence submitted by the railroad would not support a verdict on the issues raised by these allegations.

We have reviewed the issues raised by the allegations of paragraph 8(a) through 8(p) of the railroad's complaint in light of the evidence and the cases cited on each point on appeal. While we agree that there is not a great deal of evidence with respect to some of the alleged negligent acts and omissions of Alva, we do find sufficient evidence to support submission of most of the issues to the jury.

Alva's motion to withdraw each and every specification of negligence in the railroad's complaint was general and did not call to the attention of the trial court any specific failure or insufficiency of evidence with respect to any of the particular specifications. *Alva did not*

*tender instructions withdrawing unsupported allegations from the jury.*

Under these circumstances, the failure of the trial court to withdraw issues on which there was not strong supportive evidence was harmless error. Rule 61, Federal Rules of Civil Procedure, 28 U.S. C.A.

■ On the same issue, however, Alva further argues that it could not be found negligent on a number of the separate allegations because they refer to "mere transitory perils" to which Scroggins was exposed because of the carelessness of his fellow employee. For its authority, Alva cites Southern Ind. R. Co. v. Harrell, 161 Ind. 689, 68 N.E. 262, 63 A.L.R. 460 (1903).

We cannot agree that Scroggins' work subjected him to "mere transitory perils". Scroggins' work was inherently dangerous, as the evidence demonstrates, and Alva's contention on this proposition is without substance.

## IV

Finally, Alva argues that its motion for a new trial should have been granted for the following reasons. The trial court erroneously permitted the railroad to read into evidence self-serving, hearsay answers to Alva's interrogatories. The trial court erroneously construed the Safety Appliance Act as imposing liability on the railroad only for railroad cars delivered by it to the siding, thereby prejudicing Alva in the defense that Scroggins' injuries had been caused solely by the inoperative handbrake on the first railroad car, the car delivered by the Pennsylvania Railroad. The trial court, by voluminous and repetitious instructions, gave undue emphasis to the railroad's theories of the case; erroneously instructed the jury to consider paragraph 11 of the sidetrack contract; and erroneously read to the jury the Indiana Dangerous Occupations Act.

Alva urges that some of the answers to interrogatories the railroad introduced contained hearsay testimony. Without deciding the question whether the answers did contain hearsay matter, we note that at the time of introduction, Alva's only objections were that the answers were not rebuttal to the interrogatories and answers Alva introduced and that they were self-serving. Two days later Alva moved to strike the interrogatories and answers read by the railroad for the additional reasons that they were hearsay and deprived Alva of the opportunity for cross-examination.

■ An objection that an answer is self-serving does not constitute a hearsay objection. The hearsay objection, when it did come, was untimely. We hold the district court did not err in failing to strike the interrogatories and answers introduced by the railroad. We further hold that the introduction of the interrogatories was proper under Rules 33 and 26(d), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ We have carefully considered other contentions made by Alva, but are not persuaded by them. In general, trial or procedural errors are governed by federal law and not by state law. Most of the technical errors charged here do not run afoul of federal law.

In sum, the key question at issue in this case is whether a violation of the safety act is negligence *per se,* and, if so, was it also negligence as used in the contract between the parties. We have resolved this controversy favorable to the railroad.

The railroad is in the unusual situation of urging its own negligence in order that it may come within the contract requirement of showing "the joint or concurring negligence of both parties." Our review of the record as a whole compels the conclusion that there is sufficient evidence to support the jury's verdict.

The judgment appealed from will be affirmed.

Affirmed.