**GULF, C. & S. F. RY. CO. v. LOCKER.**
(No. 6770.)

(Court of Civil Appeals of Texas. Austin.
June 11, 1924. Rehearing Denied
July 5, 1924.)

**1. Appeal and error ⬅➡930(3)—Where no request to submit issue, facts in support of judgment presumed found.**

Under Rev. St. art. 1985, an issue not submitted will be presumed to have been found by the trial court in support of the judgment, if question raised is one of fact that could have been submitted to the jury.

**2. Master and servant ⬅➡112(1½)—Failure of coupler to work held to establish negligence.**

Under Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), the failure of a coupler to automatically couple by impact one time is sufficient to support a finding of the railroad's negligence.

**3. Master and servant ⬅➡129(6)—Failure of a coupler to work held proximate cause of injuries.**

In an action by a brakeman against a railroad for personal injuries sustained while attempting to couple cars, the failure of a coupler to couple automatically by impact *held* the proximate cause of plaintiff's injuries.

**4. Master and servant ⬅➡228(1)—Contributory negligence not available as defense under federal act.**

The failure of a railroad employee to observe rules is but contributory negligence, and hence not available by the railroad as defense in an action for personal injuries under the federal Employer's Liability Act (U. S. Comp. St. §§ 8657–8665).

**5. Negligence ⬅➡136(25) — Proximate cause for jury.**

Ordinarily the question of proximate cause is for the jury.

**6. Appeal and error ⬅➡1001(1)—Verdict on sufficient evidence not disturbed.**

Where, in an action for personal injuries, the jury found on sufficient testimony that the failure of a coupler to couple automatically by impact was the proximate cause of injuries, and without such failure the injuries would not have been sustained, the verdict will not be disturbed on appeal.

**7. Negligence ⬅➡56(1) — "Proximate cause" defined.**

"Proximate cause" is an efficient cause, without which the injury would not have happened, and from which danger of injury might reasonably have been anticipated as a natural and probable consequence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by H. M. Locker against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

W. W. Hair, of Temple, Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Wren, of Fort Worth, for appellant.

Walker Saulsbury and Winbourn Pearce, both of Temple, for appellee.

BLAIR, J. Appellee sued appellant to recover damages for personal injuries alleged to have been sustained while engaged in the performance of his duties incident to the coupling of cars for appellant. Appellee, a

─────────

brakeman on a freight train in the employ of appellant, engaged at the time of his injuries in handling interstate commerce, alleged that the appellant had failed to equip the cars he was handling with couplers coupling automatically by impact, in consequence of which he was injured, and that the appellant, at the time of the injury, was hauling and using the said cars not so equipped with couplers coupling automatically by impact.

Appellant answered, denying generally appellee's allegations for damages, and specifically pleaded assumed risk on the part of appellee in bar of a recovery, or to reduce the damages, and further pleaded specific rules and regulations which it charged appellee with violating at the time of his injury, as the sole cause of the injuries, and also pleaded contributory negligence.

The cause was tried to a jury upon five special issues. Questions 1 and 2, and the jury's answers thereto, are as follows:

"(1) Do you find from a preponderance of the evidence that the cars which the plaintiff was attempting to couple had failed to couple automatically by impact?" Answer: "Yes."

"(2) Do you find from a preponderance of the evidence that such failure of the cars to couple automatically by impact, if they did fail to so couple by impact, and as a proximate result thereof such failure contributed in whole or in part to plaintiff's injuries, if any, and that but for such failure such injuries would not have occurred?" Answer: "Yes."

The court instructed the jury that, if they answered "Yes" to the first two questions, they need not answer questions 3 and 4. In answer to question No. 5, relating to the amount of damages, the jury answered that appellee had been damaged $15,000 by reason of his injury. Judgment was rendered for this amount upon motion of appellee; from which appellant has duly perfected its appeal.

### Findings of Fact.

The proof showed that the crew handling the freight train in question went on a side track to pick up a string of five or six cars. The side track was on a decided curve, and the conductor, appellee, and another brakeman were on the fireman's side of the engine on the ground, as the engineer, because of the curve, could not see the signals. The conductor made the coupling on the two cars in question; that is, he signaled the engine to "come ahead" and to couple into the standing car with the one it was pushing. The cars hit together and fit right, and apparently the coupling was made. Appellee was standing by where he could see the coupling, and after it had apparently made got on the cars to release the hand brakes. The conductor went down three or four cars to make another coupling, and to cut out a bunk car they did not wish to take. After uncoupling the bunk car

the conductor gave the signal for the engine to back out with the string of cars. The engine proceeded to do so, and the two cars in question came apart—that is, one of the cars went with the engine while the other remained stationary, and after a space of about 12 feet had been reached between the two cars the engine was stopped. As to what then happened, we quote the following from appellee's testimony:

"The next thing I saw was a space, between the cars where the conductor tried to make the coupling. I noticed this space where the cars had coupled, and I went around and I noticed that the coupler was standing open; this was on the car that was attached to string attached to the engine, the cars that had been moved back. I noticed the coupler to that car was open, and I knew there was something wrong with it. I saw there was something wrong with the coupler or it would have remained coupled, and I had to go in to see what was the trouble. And after I got to the coupler I saw that the knuckle lock didn't drop, and I closed the knuckle with my hand, and it still would not drop. I closed the coupler. No, sir; that is not what you call a knuckle pin; there is a lock that drops down behind the knuckle, after it closes. It was the knuckle lock that did not drop. I worked at it several times and finally I got it to drop, and after I saw it was locked, I was afraid to risk it, to leave it open, it wasn't working good, and I went to the other car and opened the knuckle on the other car. I didn't think I could depend on the other one I had just adjusted, and I closed it and stepped over and opened the knuckle on the other car. As I opened the knuckle on the other car I gave him the come ahead signal, and as I gave him the signal I started to step out, and I backed into some rails that were extending over the end of the car. I did not step out; the rails caught in my clothes. If I had not been caught I would have had time to have stepped out. When I went in between these cars they were standing still. When I was doing the adjusting on the first car, the coupler, the one that the knuckle would not drop, the cars were standing still. When I passed over to the other coupler and opened it, the cars were standing still. They stood still until I gave the signal to come ahead. No, sir; I didn't go back and get hold of that lever at the end of the car and try to make it work. You can't make it work with a lever. I did not try it with a lever. The lever is to open it. No, sir, you cannot push it back with a lever. It has got to have an impact to push it back."

The car being coupled was loaded with steel rails to be used by the appellant on its tracks. One rail was extending out over the end of the car about 13 inches; this caught appellee in the side, and pulling on it trying to get loose turned him around facing the engine, with the end of the rail to his back and the angle iron on the other car under his ribs, and as the cars came together he was between these and was mashed. The space between the rail and the angle iron was estimated to be 4 inches. Appellee weighed

198 pounds. The witness who measured the space between the ends of the cars as they were when appellee was injured, without reference to the rail and angle iron, testified:

"On the inside of the curve, the cars were spaced 13 inches apart and on the outside of the curve 28 inches apart. A man standing in there would have 13 inches space to stand in on one side and on the other 28 inches."

The cars apparently coupled, and after the coupling was released the engine moved forward and appellee was taken out unconscious. Other facts will be discussed in the opinion, as the sufficiency of the evidence as a matter of law to establish liability is a main contention on this appeal.

## Opinion.

Appellant presents fifty-five propositions, three or four of which are briefed. They in fact resolve themselves into a very few questions for our determination, which we will discuss without referring to the specific propositions of the brief.

[1] It is first contended that under the undisputed testimony there is no basis, or warrant or support for a finding that the coupler in question did not comply with the federal statute relating thereto. The jury found in response to question 1 that the coupler "failed to couple automatically by impact." The statute makes it unlawful for a carrier, engaged as appellant was, to haul or permit to be hauled any car "not equipped with couplers coupling automatically by impact, and which cannot be uncoupled without the necessity of men going between the ends of cars." One point insisted upon in this connection is that the jury's finding that the coupler "failed to couple automatically by impact" was not the test; but that the question at issue was whether appellant had violated the statute by a failure to equip its cars with couplers coupling automatically by impact. Appellee insists that if such were an issue of fact appellant cannot here complain, since having failed to request the submission of the issue to the jury, under the provisions of article 1985, R. S., such fact will be presumed to have been found by the trial judge in support of his judgment. We agree with this contention, if the question raised is one of fact that could have been submitted to the jury. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132. However, we think the issue submitted was the test fixing appellant's liability under the facts of this case. The question here was not a failure to equip, but, Did the couplers with which the cars were equipped fail to couple automatically by impact, causing the injury? Having this fact determined, the court under the statute and decisions must hold that the statute has been violated. In other words, the statute in its broad sense is not only violated because of a failure to equip the drawhead of a car with automatic couplers, but it is also violated when those couplers fail to couple automatically by impact. The testimony is undisputed that appellant had equipped the cars in question with automatic couplers of a standard make. It is also undisputed that they failed to couple automatically by impact one time. If there was any question as to whether there was impact, that was determined by the jury, for their answer that the cars "failed to couple automatically by impact" necessarily implied that there was impact. Cars cannot be said to couple automatically by impact where they are brought together in a proper position and hit and fit together and do not couple. So under the facts a finding of the jury that the couplers on the cars "failed to couple automatically by impact" necessarily fixed liability on appellant, for the court must render judgment upon such finding that the statute requiring a carrier to equip its cars with "couplers coupling automatically by impact" had been violated. In other words, all the court wanted to know of the jury was whether a certain state of facts existed, and, if found to so exist, then as a matter of law the statute relating thereto had been violated. The special issue statutes were passed for the purpose of having the jury find only questions of fact, and for the court to apply the fact or facts found to the rule of law governing.

If the charge had been a general one, the court would not have instructed the jury to find if the statute had been violated, but would, as in the case of Ry. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110, have simply told the jury that, if the cars in question were not equipped with couplers coupling automatically by impact, without the necessity of the plaintiff going between the ends of the cars, and by reason of which the injury was a proximate result, they would find for the plaintiff. The court merely told the jury that if they found a certain fact then the statute had been violated and does not require them to find whether the statute was so violated. Lancester & Wight v. Allen, 110 Tex. 217, 217 S. W. 1032; Johnson v. Ry. Co., 196 U. S. 18, 25 Sup. Ct. 158, 49 L. Ed. 363; Ry. Co. v. Wagner (Tex. Civ. App.) 166 S. W. 24; Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204; Ry. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110; Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Ry. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995.

[2] Another point made under this proposition is that the statute does not require couplers to couple every time the attempt is made, and, where it fails to couple only one time, no defect in the coupler being shown,

as a matter of law the testimony is insufficient to support the verdict of the jury or judgment of the court that the couplers had failed to couple automatically by impact, in violation of the Safety Appliance Act (U. S. Comp. St. § 8605 et seq.). The couplers in question failed to couple automatically by impact one time. The conductor making the coupling thought it made, being in the right position to do so. Appellee was compelled to go between the cars to make the necessary adjustment so they would couple by a second impact. Appellee and the other brakeman who witnessed the attempted coupling testified that the coupling could not have been made by the lever at the end of the car, or any other way except by impact or manipulation by the hands as appellee did. Both he and appellee qualified as experts from long service as to couplers. Other employees testified that the cars in question coupled several times after the injury by impact on the same day. Experts testified that no coupler had been manufactured that would couple automatically by impact every time. They also testified that they found nothing defective about the coupler in question. Appellee, also an expert, testified that there was something wrong with the coupler on one of the cars; that the knuckle lock would not drop; that he tried to work it four or five times before he got it to drop; that he was afraid to risk it open, so he closed it and opened the one on the other car being coupled at the time. We think this proof sufficient to show defective couplers, if it is necessary to show more than the failure to couple by impact. Ry. Co. v. Wagner, supra. Counsel for both parties have made an exhaustive research of the authorities on this subject. From them and our own research we have concluded the point against appellant. The point involved being the construction of a federal statute, and the injury having occurred while appellant was engaged in interstate commerce, we rely mostly upon the decisions of the Supreme Court of the United States to sustain our conclusion.

In the case of Johnson v. Ry. Co., 196 U. S. 19, 25 Sup. Ct. 162 (49 L. Ed. 363) the court held:

"The risk in coupling and uncoupling was the evil sought to be remedied, and that risk was to be obviated by the use of couplers *actually* coupling automatically." (Emphasis ours.)

In the case of Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, the Supreme Court, in construing the effect of other provisions of the Safety Appliance Act, necessarily laid down the rule governing here. In this case the court discussed at length the change of the common-law liability of the carrier wrought by the passage of this act, and concluded:

"The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

In the case of Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204, which is similar in many respects to the case at bar, the court say:

"And the concession is made that in the Taylor Case, 210 U. S. 281, and in C., B. & Q. R. R. Co. v. United States, 220 U. S. 559, this court settled that the failure of a coupler to work at any time, sustains a charge of negligence in this respect, no matter how slight the pull on the coupling lever. And, further, 'the mere fact that the pin would not lift when plaintiff endeavored to lift it makes a case of negligence under the first count.'"

Later it held, in the case of Ry. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110:

"We need not in this case determine, what was conceded in Chicago, R. I. & Pac. Ry. v. Brown, 229 U. S. 317, 320, that the failure of a coupler to work at any time sustains a charge that the act has been violated."

Later still, in the case of Ry. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995, this court said:

"The jury, under an instruction of the court, was permitted to infer negligence on the part of the company from the fact that the coupler failed to perform its function, there being no other proof of negligence. It is insisted this was error, since, as there was no other evidence of negligence on the part of the company, the instruction of the court was erroneous as from whatever point of view looked at it was but an application of the principle designated as res ipsa loquitur. * * * We think the contention is without merit because, conceding in the fullest measure the correctness of the ruling announced in the cases relied upon, to the effect that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances, we are of opinion such principle is here not controlling, in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars. St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 294, 295."

Appellant insists that these cases do not hold in the sense contended for by appellee—that a failure to couple one time by impact establishes the negligence of the carrier. They may not so hold in specific words, but the language used can mean nothing else. The use of the language, "that the failure of a coupler to work *at any time* (italics ours) sustains a charge of negligence in this respect," can only be interpreted to mean that a failure to work one time establishes the charge of negligence.

In support of this contention, appellant relies upon the case of Ry. Co. v. Bounds (Tex.

Civ. App.) 244 S. W. 1099. The facts in the Bounds Case are not like the facts in this case, though similar in many respects. However, in the Bounds Case the court proceeded on the theory that Bounds did not have to go between the ends of the cars to make the adjustment, while it is undisputed that to make the adjustment for the second attempt to couple by impact in this case it was necessary for appellee to go between the ends of the cars to do so. This fact was recognized as vital by the court in the Bounds Case, for it used the following language concerning it:

"There is no testimony tending to show that Bounds attempted to make any such adjustment of the knuckles of the engine tender or of the box car appliances before he resorted to the use of his hands. He doubtless acted as he did because that method was easier and more speedy. Gandy, another brakeman, testified that the habit of using the hands for the purpose of adjusting closed knuckles was resorted to two-thirds of the time by brakemen. It may be that after the engine and tender were disconnected from the train, and before the attempt to couple with this particular car was made, the knuckle on the tender had been partially closed by the movement over the rails. There is nothing to indicate that it could not have been opened on that occasion by means of the pinlifter."

In support of this conclusion the Court of Civil Appeals cites Ry. Co. v. Charlton, 247 Fed. 34, 159 C. C. A. 252, which holds that, where no effort was made to use the lever at the end of the car to open the knuckle, the purpose for which it was put there, and which was shown to be in good condition, a brakeman going between the cars to open the knuckle with his hands cannot recover for a violation of the Safety Appliance Act by the carrier, since the act did not require that the coupler be so constructed that the knuckle would remain open at all times ready for impact.

In each of these cases cited by appellant the court's decisions were upon the theory that the injured party had willfully abandoned the safety appliance with which the law requires the carrier to equip the cars for his use in opening the knuckle lock, and, no defect being shown in this appliance, that he cannot recover. In other words, no necessity is shown for his going between the ends of the cars, as he could have done all that was necessary to effect the coupling by means of the lever at the end of the car. Such is not the case here. The knuckle was standing open on one of the cars in question, and the knuckle pin would not drop. All the witnesses testified that the knuckle could be opened by means of the lever, but all testified that it could not be closed by the lever, and could only be closed by impact or by manipulation with the hands, as appellee did. And they all concur that it was necessary for appellee to go between the cars to make the adjustment he made on this occasion. It failed to couple by impact, and the alternative left appellee was to go between the ends of the cars and make the adjustment with his hands. This, according to all witnesses, was in keeping with "good railroading," and we think fixes liability upon appellant for the failure to equip its cars with automatic couplers, coupling automatically by impact, from which failure an injury was sustained.

The statute does not attempt to define "coupling automatically by impact." In fact, it defines itself. Neither does it provide any given number of tests by which to determine a failure to couple by impact, but requires that the coupler must couple automatically by impact. It could not certainly be contended with any degree of reason that, where an employee was injured by reason of a coupler failing to couple one time by impact, about which coupler the employee said there was something wrong, and that it would not work until four or five attempts with his hands to manipulate it, and that he would not risk it in the position it was in, but changed it and adjusted the other car to be coupled for the second impact, he could not recover for injuries received in making the second attempt to couple, because forsooth the coupler did thereafter couple by impact several times. Whatever may have been the law heretofore on this question, it is now well settled by the above-quoted authorities against this contention of appellant.

[3] Appellant also insists that the failure of the coupler to couple automatically by impact one time was clearly, under all the testimony, not the proximate cause of appellee's injuries. The jury found, in answer to question No. 2, that the failure of the couplers to couple automatically by impact was a proximate result of appellee's injuries, and that but for such failure such injuries would not have occurred. In this connection appellant pleaded assumed risk by appellee's alleging the coupling was being made on a decided curve, causing the inside ends of the cars to come closer together where appellee was standing, and that the cars were loaded with steel rails, one of which was protruding over the end of the car, which appellee saw, or should have seen, being open and patent to him, and that he should have known that he would have been mashed by them if he remained between the ends of the cars. It was also pleaded that at the time appellee was caught by the rails he had done all that was necessary to effect the adjustment of the couplers, and that he signaled the engine to "come ahead" before he stepped out from between the cars to a place of safety, in violation of the written rule of appellant governing its employees in such cases, and that the protruding rails became the intervening and proximate cause of the injury. These acts were also pleaded as contributory negligence and as the sole proximate cause

of his injuries. It also pleaded that appellee knew of the danger incident to going between the cars, and that no coupler would couple automatically by impact every time, and that he knew the rules of the company against remaining between the cars after he had adjusted the couplers while a coupling was being attempted, and that appellee gave the "come ahead" signal at his own peril.

The testimony heretofore set forth will not be repeated here. Suffice it to say that all the witnesses testified that, up to the time appellee gave the "come ahead" signal to effect the second coupling, he had done that which was necessary under the circumstances and in keeping with "good railroading." The expert witnesses testified that appellee was guilty of violating the rules of the company in giving the signal to "come ahead" and attempting the second coupling without having stepped from between the ends of the cars. Appellee testified that if there were ever promulgated such rules they were not followed, and that he made the coupling in the same manner that it was made two-thirds of the time; that he had never been corrected, and that he had seen the conductor in charge of the train do it the same way. Other witnesses corroborated him as to it being the custom two-thirds of the time to give the signal after making the adjustment and then step from between the cars. Appellee says that he opened the coupler and gave the signal for the engine to come ahead, and as he gave the signal he started to step backward two steps necessary to get from between the cars, and backed into some rails that were extending over the ends of the car; that his clothes were caught by the rails and held him, but for which he would have had time to have gotten out; that he had not seen the rails.

The trial court submitted the case to the jury upon the theory that, if it was found that appellant had violated the Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) as to a failure to equip its cars with couplers coupling automatically by impact, which in whole or in part caused the injury, the said statute precluded appellant in its defenses of assumed risk and contributory negligence. In this we think the trial court correct. Appellant's pleadings as above set forth, and the testimony adduced, merely pleaded and tended to establish the defenses of assumed risk and contributory negligence.

In the case of Ry. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168, the question here presented under a very similar state of facts was determined. After holding that there was not any evidence tending to show that the brakeman gave the "come ahead" signal as a ground upon which the trial court was authorized to refuse the requested charge that, if plaintiff gave the signal upon entering between the cars, he was guilty of negligence, etc., the court went further and held that such charge was incompatible with the rule of comparative negligence as established by the Employers' Liability Act. On this subject the court said:

"If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted 'in whole or in part' from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act. * * * But having regard to the state of the proof as to the defect in the coupling mechanism, its failure to automatically work by impact after several efforts to bring about that result, all of which preceded the act of the switchman in going between the cars, in the view most favorable to the railroad, the case was one of concurring negligence; that is, was one where the injury complained of was caused both by the failure of the railway company to comply with the Safety Appliance Act and by the contributing negligence of the switchman in going between the cars."

In the Brown Case, supra, where the brakeman was walking beside the moving train and trying to uncouple the cars by means of the lever which did not work, and he reached over to pull the pin with his fingers without stopping the train, and while so doing his foot slipped into an unblocked guard rail where it was struck by a low brake beam of the moving train and cut off, it was held that the brakeman could recover, notwithstanding the finding by the court that, "had he, under these circumstances, abandoned the uncoupling altogether until the car had come to a standstill, he would have been saved the accident."

In the Wagner Case, supra, in passing upon the question of contributory negligence of the plaintiff, the court held upon much stronger evidence of negligence of the employee than in the instant case that any misconduct on the part of the plaintiff (the brakeman who attempted to make the coupling by pushing the drawhead over with his foot to align it for coupling) was no more than contributory negligence, which as already shown is by the Employers' Liability Act excluded from consideration in a case such as this.

In Ry. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125, it was held:

"It is too plain for argument that under this legislation the violation of the Safety Appliance Act need not be the sole efficient cause, in order that an action may lie. The Circuit Court of Appeals (217 Fed. Rep. 524) held

that the element of proximate cause is eliminated where concurring acts of the employer and employee contribute to the injury or death of the employee. We agree with this, except that we find it unnecessary to say the effect of the statute is wholly to eliminate the question of proximate cause. But where, as in this case, plaintiff's contributory negligence and defendant's violation of a provision of the Safety Appliance Act are concurring proximate causes, it is plain that the Employers' Liability Act requires the former to be disregarded."

[4] A failure to observe rules by an employee is nothing more than contributory negligence on the part of such employee, and cannot be a defense in cases of this kind. Ry. Co. v. Hosey (Tex. Civ. App.) 247 S. W. 327.

As to the risk assumed by appellee by reason of failure to see the rail protruding over the end of the car, it is analogous to the Brown Case, where the brakeman could or should have seen the open guard rail; in which case it was held that the defense of assumed risk was precluded by statute, where the carrier was guilty of violation of the Employers' Liability Act, causing or contributing to the injury.

As to the protruding rail on the car being coupled being the intervening proximate cause of the injury, we think such contention without merit. Appellee was compelled to go between the cars to effect a coupling, as the automatic coupler had failed to do so by impact. That was his sole purpose in going between the cars. Everything he did was to that end. The rails caught him while he was still trying to make the coupling and before it was actually made by the second impact.

[5] Ordinarily the question of proximate cause is one for the determination of the jury. Ry. Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; Express Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Lancaster v. Fitch, 112 Tex. 293, 246 S. W. 1015; Donegan v. Ry. Co., 165 Fed. 869, 91 C. C. A. 555.

[6] The jury found upon sufficient testimony to sustain their verdict that the failure of the couplers in question to couple automatically by impact was the proximate cause, and without such failure appellee's injuries would not have been sustained. Their verdict will not be disturbed.

In the case of Gonzales v. Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17, the court said:

"By proximate cause we do not mean the last act or cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances."

In Union Pacific Ry. Co. v. Hadley, 246 U. S. 330, 38 Sup. Ct. 318, 62 L. Ed. 751, it was held:

"We must look at the situation as a practical unit rather than inquire into a purely logical priority. But, even if Cradit's negligence should be deemed the logical last, it would be emptying the statute of its meaning to say that his death did not 'result in part from the negligence of any of the employees' of the road."

Ruling Case Law, vol. 22, p. 127, § 14:

"It seems to be very generally agreed that proximate cause has no necessary connection with time or distance. It means closeness of causal relation, not nearness in time nor distance. It is the efficient cause, the one that necessarily sets the other causes in operation."

Our conclusion as to proximate cause is sustained by the following authorities: Ry. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125; Ry. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110; Ry. Co. v. Layton, 243 U. S. 617; 37 Sup. Ct. 456, 61 L. Ed. 931; Ry. v. Huxoll, 245 U. S. 535, 38 Sup. Ct. 187, 62 L. Ed. 455; Ry. Co. v. Russell, 183 Fed. 722, 106 C. C. A. 160; Ry. Co. v. Hosey (Tex. Civ. App.) 247 S. W. 327; and Ry. Co. v. Powell (Tex. Civ. App.) 252 S. W. 268.

[7] Appellant also complains that the trial court's definition of proximate cause is defective. It is as follows:

"By proximate cause is meant an efficient cause, without which the injury would not have happened, and from which danger of injury might reasonably have been anticipated as a natural and probable consequence."

This court, in passing upon this identical definition, speaking through Judge Key, used the following language:

"It states the rules of law and submits the issues to the jury with a degree of terseness, perspicuity, and accuracy which we have seldom, if ever, seen excelled in such a document." Ry. v. Jackson, 51 Tex. Civ. App. 646, 113 S. W. 628.

We maintain that view now.

All other propositions have been duly considered and are hereby overruled; and, finding no error in the judgment of the trial court, it is affirmed.

Affirmed.