## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. BOUNDS. (No. 2956.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 30, 1924. Rehearing Granted Nov. 20, 1924.)

1. Master and servant ☞111(1½) — Safety Appliance Act applicable to coupling and uncoupling operations.

Expression "without necessity of men going between ends of cars," as used in federal Safety Appliance Act (Act March 2, 1893 [U. S. Comp. St. §§ 8605–8612]), substantially reenacted in Rev. St. art. 6710, is intended to apply to both coupling and uncoupling operations.

2. Master and servant ☞278(6) — Evidence held insufficient to show defective couplers.

In action for death of brakeman, who, after attempt to couple cars by impact had failed, went between them to adjust automatic coupler by hand, and was injured when cars backed down, evidence held insufficient to support finding that either of couplers involved was defective.

3. Master and servant ☞280—Facts held not to support finding brakeman was misled by presence of air brakes to take risk he otherwise would have avoided.

In an action for death of brakeman, who, after an attempt to couple cars by impact had failed, went between them to adjust automatic coupler by hand and was injured when cars backed down, facts held not to support finding that brakeman was misled by presence of air brakes, and caused to take a risk he otherwise would have avoided.

Willson, C. J., dissenting.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Mrs. Bessie Bounds, administratrix, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

E. B. Perkins, of Dallas, and Marsh & McIwaine, and Bryan Marsh, all of Tyler, for appellant.

Johnson, Edwards & Hughes, of Tyler, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee, Bessie Bounds, temporary administratrix of the estate of Lewis Bounds, for damages resulting from the killing of Lewis Bounds, who was her husband. In a former appeal the case was reversed and the cause remanded because of the insufficiency of the evidence to support the verdict. See Railway Co. v. Bounds, 244 S. W. 1099. In many respects the facts presented in this appeal are substantially a repetition of those appearing in the former record.

Bounds was killed at Athens, a station on the appellant's line of railway, on February 6, 1921, while assisting in some switching operations. He was the head brakeman on a freight train running from Waco to Tyler. His train arrived at Athens in the early morning, some time before daylight. The crew had orders to "pick up" at Athens three freight cars and carry them on to Tyler. The freight cars were standing on a switch track a short distance from the main line. The engine was detached from the train and moved over to the switch accompanied by Hart, the rear brakeman, and Bounds, the head brakeman. Hart went a little in advance, and released the hand brakes on the cars to be "picked up," lined up the air connections, and disconnected the rear car from those to be left standing on the switch track. After a signal from him the engine was backed against the first car for the purpose of making the coupling. This car is referred to by the witnesses as "B. & O. No. 87996." After the impact Bounds went between the tender, and the B. & O. car, presumably for the purpose of connecting the air hose and to open the angle cock on the tender. He came out on the right side of the tender, and passed a signal to the engineer to start. When the engine was moved the tender and car separated; the coupling failed to hold. The separation broke the air-hose connection, and automatically set the brakes on the tender. The engine had moved only a short distance from the B. & O. car. That distance was estimated by the witnesses at from 6 to 10 feet. Bounds then went in between the tender and the car and closed the angle cock on the tender so as to release the air brakes. While in there he was in some way caught between the drawheads of the couplers on the tender and the B. & O. car and fatally injured. He died about an hour later. It appears that the three freight cars were standing on a slight incline sloping toward the engine. Apparently the momentum communicated when the engine was started had set them in motion, and they rolled slowly down toward the tender. The bruises on Bounds' body indicated that he was standing up when the collision occurred, and, in the opinion of some of the witnesses, was facing the tender. Why he was in that position, or what he was doing at the time, are

matters of inference only. His injuries were such that he could not make any statement. When the engineer and rear brakeman reached him he had fallen out across the rail on the right side of the track, the side on which he had entered. After the accident, the engine was detached from the three cars and coupled on to the caboose for the purpose of taking Bounds to Tyler for treatment, but he died on the way.

In her amended original petition the appellee alleged that the proximate cause of the injury to Bounds was the failure of the railway company to comply with the federal statute which requires trains engaged in interstate commerce to be equipped with automatic couplers. It is charged that the couplers on the tender and the B. & O. car were both out of order. It is also alleged that the appellant had negligently failed to maintain in good order the air brakes with which the three freight cars were equipped; that under the custom and usage then prevailing among the appellant's employees Bounds was induced to rely and did rely on the sufficiency of the air brakes to hold those cars after the air connection had been severed; and that the failure of the brakes to perform that service was also a proximate cause of the injury.

Special issues were submitted, and the jury found substantially as follows: (1) That the tender of the engine and the B. & O. car were not equipped with couplers capable of coupling automatically by impact without the necessity of the brakeman going in between the ends of the tender and car in order to effect a coupling, and that this defective condition was the proximate cause of the death of Bounds; (2) that the custom and usage of the appellant and its agents were such as to lead Bounds to believe that the air brakes and brake appliances on the three freight cars were intended and maintained for the benefit of Bounds and other brakemen engaged in switching operations, that Bounds acted upon the belief that the brakes were in good order; (3) that the air brakes were defective, due to the negligence of the appellant in failing to make the proper repairs, and such negligence was a proximate cause of the injury to Bounds. The jury also found that Bounds was guilty of contributory negligence. They gave the appellee a verdict for the net sum of $28,000. In disposing of the motion for a new trial the court required her to remit $11,000, and entered judgment in her favor for $17,000. The contention on this appeal is that the evidence is insufficient to support the findings against appellant made by the jury.

[1] It is conceded that the railway company was engaged in interstate commerce at the time Bounds was injured. The federal statute (Act March 2, 1893, c. 196 [U. S. Comp. St. §§ 8605–8612]) requires common carriers so engaged to equip their cars with couplers which will couple automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. The statute of this state (article 6710, Rev. Civ. Stat.) is substantially a re-enactment of the federal law. It is conceded that the cars in question were equipped with automatic couplers of the kind contemplated by the act of Congress, but it is alleged that one or both of the couplers then being used were out of order. It has been definitely decided that the expression "without the necessity of men going between the ends of the cars," as used in the federal statute, is intended to apply to both coupling and uncoupling operations. Johnson v. S. P. Ry. Co., 196 U. S. 1, 25 S. Ct. 158, 49 L. Ed. 363.

[2] Logically, the first question to be considered is the sufficiency of the evidence to support the finding that either of the couplers involved in those operations was defective. To simplify the inquiry we shall first consider the evidence touching the condition of the coupler on the tender. The engine to which the tender was attached is referred to in the testimony as No. 560, and the train it was pulling on that occasion operated between Waco and Tyler. Tipton, the engineer in charge, testified that when the engine was detached from the train at Athens to do the necessary switching the knuckle on the tender was open, and he felt sure that it was still open when he reached the switch track on which the freight cars were standing. There was nothing, he thought, in the condition of the track over which he passed to cause the knuckle to close. When the signal was given to back against the cars he moved his engine in the usual manner for making such couplings. The track was straight, and the impact, he thought, a proper one under the circumstances. But when he moved forward at a signal from Bounds the coupling failed to hold.

Gandy, a brakeman who took the place of Bounds after the injury, testified that when the crew returned with the engine and caboose from Tyler about 9 o'clock a similar effort was made to couple the tender to the B. & O. car, and it again failed to hold. Here, as on the other appeal, these two failures are relied on to prove that the coupler was defective. On the last trial appellee presented no witness who testified to having made a personal examination of this coupler at the time of the injury or immediately afterward. In connection with this evidence it was shown by appellee's witnesses that when the cars ran together at the time Bounds was caught between the drawheads the coupling was successfully made. Tipton, the engineer, testified that it seemed to him that the cars had been coupled; and Hart, the rear brakeman, stated that they were coupled, and

that he uncoupled the tender from the car when they were preparing to carry Bounds to Tyler. Both of these were witnesses called by the appellee. It was also shown without contradiction that this tender and engine were coupled and uncoupled several times that night at Athens when preparing to carry Bounds in the caboose to Tyler, and that the coupling did not fail in any instance, but appeared to be in good condition. The engineer testified on cross-examination that the same engine had pulled the train from Tyler to Waco the day before, and as far as Athens on the return, without any failure of the coupling to hold and without any evidence of a defect; that the crew had occasion to do switching at a number of stations on the route, and to use that particular coupling many times. He also stated that Bounds had done the coupling and uncoupling going and returning, and had made no complaint to him, the engineer, regarding the condition of the coupler; that, if any defect was disclosed, it was Bounds' duty to report to the engineer, but none had been reported. So far as witness could determine from the operations of the coupler on that trip it was in good condition when they arrived at Athens. The same witnesses and several others testified without contradiction that the failure to make a coupling on the first trial was not necessarily due to a defect in the coupler. Such failures were of frequent occurrence with couplers in good condition. The proof showed that other things besides a defective coupler might cause a coupling to fail to hold. One of appellee's witnesses testified that the failure of a coupling to hold when it is apparently made is due to the failure of the pin to seat properly, and that a second attempt might prove successful. Such was substantially the state of the evidence on the first appeal.

As further proof the appellee offered in evidence the roundhouse records of repairs ordered to be made on engine No. 560. These records contained notations made by the government inspector regarding repairs needed on different parts of the engine and tender, including the couplers, during a period of approximately 40 days immediately prior to the injury The last record was just before engine No. 560 was taken out on the trip to Waco, the day before Bounds was hurt. The records offered showed that on seven different occasions during that period the inspector had found that the coupler would "take the gauge"; that meant that the knuckle would open too wide, or as much as 5⅛ inches. The notations made by the government inspector were evidently intended as directions that the defects noted should be repaired at once. There was no affirmative evidence that those directions had been obeyed. But it does appear inferentially that the repairs were made. Bounds was injured

early on the morning of February 6. The inspector's record of February 1st showed that the coupler would "take the gauge" on that date. Some other needed repairs were also noted. A failure to observe those directions before again sending the engine out on the road subjected the railway company to a penalty under federal regulations. The record of the next inspection, made on February 4, the day before that engine was taken out for the trip to Waco, shows that the only repairs mentioned as needed were the tightening of the binders and carrier irons. No mention is made of the coupler "taking the gauge." If those records are to be treated as trustworthy, in an investigation of this character, they tend to show what defects did not exist at each inspection, as well as those which did exist. We have a right to infer that the inspection was complete and that the inspector called attention to all repairs then needed. The fact that in the record of February 4 no mention was made of the coupler "taking the gauge" may therefore be taken as some evidence that this particular defect had been repaired, and that the coupler was in good condition except in the respects noted. Since the making of those repairs was in the line of duty of other employees of the railway company, we may assume in the absence of evidence to the contrary, that the duty was performed. Hence we conclude that proof of a defect in the coupler on the tender is now no stronger than it was on the former appeal.

We come next to consider the sufficiency of the evidence to support a finding that the coupler on the B. & O. freight car was defective. This was a foreign car, and had been left on the switch track at Athens by a connecting carrier for transportation over appellant's line to some point north. Both it and the tender were equipped with what is called the "Simplex coupler," regarded as one of the simplest designs then in use. Here the appellee also relies upon the failure of the coupling to hold on the two occasions previously referred to. That result might have been attributed to a defect in the coupler on the B. & O. car, even if the coupler on the tender were in good condition. Appellee's witness Gandy, who took Bounds' place, testified that when they returned from Tyler, several hours after the injury, they undertook to couple the engine to the B. & O. car again, and that the first effort failed. He then closed the knuckle on the car with his hand, and opened the knuckle on the tender. He lifted the pin with the lever provided for that purpose, and opened the knuckle with his hand. He used his hand, he said, because the knuckle did not open wide enough when using the lever. The next impact was successful, and the coupling held. On his direct examination he stated that he had used his hand in operating the

knuckle. But on cross-examination he stated that he did not try by repeated manipulations to ascertain whether he could open the knuckle wide enough wth the lever alone. He admitted that in nearly every coupling operation he and other brakemen used their hands because it was an easier and quicker method of opening a knuckle. He did not know whether or not the knuckle could be opened by two or more manipulations of the lever; he did not know of any defect in that coupler other than that indicated by its failure to open wide enough with the first effort in the use of the lever.

The evidence thus far shows two failures of that coupling to hold. They occurred, however, several hours apart, and the second impact in each instance resulted in a successful coupling. On the former appeal we held that such evidence, unsupported by other facts, was insufficient, and we see no reason for now receding from that conclusion. Counsel for appellee refer to cases' which, it is claimed, support the rule that a solitary failure of a coupling to hold is sufficient to sustain a finding that the coupling was not up to the standard required by the act of Congress. In a supplemental brief they call attention to the case of G. C. & S. F. Ry. Co. v. Locker (Tex. Civ. App.) 264 S. W. 595, as supporting that conclusion. In that case the jury was not required to rely solely on the failure of the cars to couple as evidence of the defect. In discussing the facts Associate Justice Blair, who rendered the opinion, calls attention to the difference between the state of the evidence in that case and in this case on the former appeal. He apparently agreed with the holding of this court in disposing of that appeal. Undoubtedly the failure of a coupling to hold after one impact occurring under favorable conditions does furnish some evidence of a defect in those appliances; but to say that such failure alone, unaccompanied by other reliable circumstances, is sufficient evidence of an unlawful defect would establish a dangerous judicial precedent. Such a holding would be tantamount to saying that Congress demanded that the equipment of cars with appliances for coupling by impact should be mechanically perfect. Certainly Congress contemplated no such result. Mechanical perfection in any human device is a known physical impossibility. Nor was such perfection essential to the accomplishment of the ends which Congress had in mind.

We have not been referred to any rule or to any railway regulation which called for such haste in coupling operations as denied to employees the time to fairly test the efficiency of such appliances before going between the cars. Repeated manipulations of the lever required but little time and effort, and there was uncontradicted testimony that such manipulation would often open couplers that did not open on first trial. The jury found that Bounds was guilty of contributory negligence. While such negligence is not a complete defense in suits of this character, that finding is entirely consistent with the conclusion that Bounds did an unnecessary thing in going between the cars. It was not required that he stand between the drawheads to either open or close the knuckle of either coupler.

In addition to the failure of the coupling to hold, appellee was permitted to prove, over the objection of appellant, that a photograph exhibited to the jury showed that the carrier iron which supports the drawhead of the coupler on the B. & O. car was low on one side; that this might cause the coupler to get out of alignment and thus prevent the coupling from being made. We attach little importance to that testimony. The original photograph was a part of the record sent to this court, and a careful inspection shows nothing to support a finding that this coupler was out of alignment. The defect, if any, which caused the death of Bounds was the failure of the coupling to hold after it was apparently made. Unless that failure made it necessary for Bounds to go in between the cars to make some further adjustment of the coupling appliances in order to effect a coupling with the next impact it cannot be said that a defect was the proximate cause of his injury. The evidence makes it plain that it was not necessary for him to get in between the couplers to close the angle cock on the tender, because that appliance was on the side where he was standing. It is equally plain that it was not necessary for him to get in that position to either open or close the knuckle on the B. & O. car, even if he had to use his hand in the operation. The only conceivable purpose, not foreign to his work, which Bounds could have had for going to the opposite side of the track was to adjust the knuckle on the tender. The lever used for that purpose was on that side. Whether Bounds was injured when going over to that side, or when returning, is not shown. There was no eyewitness to his movements. Assuming, then, that he did go across the track for the purpose of either opening or closing the knuckle on the tender, the question is, Was he doing something essential to effecting a coupling with the next impact? Witnesses for both the appellee and the appellant testified that, if one of the knuckles were open, it was immaterial whether the other was open or closed. The coupling could be made with both of them open or with one closed and the other open. If Bounds wanted to open or close one knuckle, that on the B. & O. car was equally, if not more, convenient to him. The lever on that car was on his side of the track, and must

have been within a few feet of where he was standing when he closed the angle cock. There was then no occasion for him to go to the opposite side of the track in order to make a necessary adjustment, even if he had to use his hand in the operation. The physical facts show that the couplers were either left in proper adjustment for effecting a coupling by the next impact or that Bounds had put them in that condition before he was injured. For the undisputed evidence is that the coupling was made in the impact that caused the injury.

[3] It was also contended that the appellant was negligent in failing to have the air brakes on the freight cars in proper condition to hold them when the coupling was broken. On the former appeal we held that the law did not require such cars to be equipped with air brakes. That ruling is not contested in this appeal, but it is contended that because air brakes were on these cars Bounds had a right to rely and did rely upon their sufficiency to hold the cars and prevent them from rolling down against the tender. As supporting the averment that Bounds relied upon the sufficiency of the air brakes the appellee proved that all of the cars operated by appellant were thus equipped, and that the employees generally regarded them as sufficient to hold cars on such inclines. It is unnecessary to extend this opinion further by a discussion of that phase of the evidence. The facts do not support a finding that Bounds was misled by presence of the air brakes and caused to take a risk he otherwise would have avoided. He was within a few feet of the cars, and could easily discover if they were moving.

We are of the opinion that the evidence is not materially stronger than on the former appeal. The judgment will therefore be reversed. And, since this is the second appeal, and the record contains nothing to justify an inference that the case can be made stronger on another trial, the judgment will be here rendered in favor of the appellant.

WILLSON, C.J. (dissenting). I do not agree that the testimony Judge HODGES refers to in the opinion disposing of the appeal did not warrant the finding of the jury that the tender of the engine and the B. & O. car were not equipped with the kind of couplers specified in the federal Safety Appliance Statute, and therefore I do not agree that the judgment should be reversed as the other members of the court have determined it should be. My dissent from the conclusion reached by the majority is partly based on what I understand to be the meaning of the statute as determined in Railway Co. v. Brown, 229 U. S. 317, 33 S. Ct. 840, 57 L. Ed. 1204; Railway Co. v. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110; Railway Co. v. Gotschall,

244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995; Railway Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; Railway Co. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582; Railway Co. v. Drake (C. C. A.) 276 F. 393; Railway Co. v. Colvin (C. C. A.) 276 F. 15; Railway Co. v. Eisenhart (C. C. A.) 280 F. 271; Railway Co. v. Locker (Tex. Civ. App.) 264 S. W. 595; Railway Co. v. Thomas, 21 Ariz. 355, 188 P. 268; Railway Co. v. Cockerham (Miss.) 99 So. 14. Those cases establish, it seems to me, that testimony showing a failure at any time of couplers to couple automatically by impact warrants a finding of negligence on the part of the railway company; but, if such is not their effect, I think the finding was warranted by the testimony showing such failure, when considered in connection with the testimony showing that the couplers on the tender of the engine were found to be out of repair when inspected as stated in Judge HODGES' opinion on seven different occasions during the 40 days immediately preceding the time when the injury to Bounds occurred.

### On Rehearing.

HODGES, J. In her motion for rehearing appellee asks that in the event we adhere to the judgment of reversal the case be remanded for another trial. Justice LEVY is of the opinion that should be done, and the writer concurs. The former judgment will be modified accordingly.